## 4119. HORSLEY v. WOODLEY.

RUSSELL, J. The decision of this case is controlled by the ruling of this court in *Ford* v. *Thomason*, 11 *Ga. App.* 359 (75 S. E. 269). The suit was brought for commissions alleged to be due by the defendant for the plaintiff's services as real-estate agent in aiding another real-estate agent to make a sale. As it affirmatively appears that the plaintiff had not registered with the ordinary, nor paid the tax to the tax-collector, required by section 978 of the Civil Code (1910), he can not recover commissions accruing from the sale of real estate. *Ford* v. *Thomason,* supra. The court, therefore, erred in overruling the motion for a new trial.

DECIDED OCTOBER 9, 1912.

### ON REHEARING.

1. One can carry on the business of a real-estate dealer, within the meaning of that term, and, as such, be subject to the provisions of section 978 of the Civil Code, though he may not succeed in carrying through a single sale which he attempts to make. Likewise, one is a real-estate dealer who, on his own account, and as a business independent of that of another real-estate agent, engages for a consideration to aid others— whether the owners of the property or their agents—in selling real estate which is offered for sale.
2. While it is the better practice to raise by plea, as a matter of affirmative defense, the point that the plaintiff's claim is founded upon an illegal or immoral consideration, still, upon the hearing of a motion for a new trial, the general assignment of error, averring that the verdict is contrary to law and without evidence to support it, is sufficient to demand an investigation of the evidence. If it appears, from a review of the evidence, either in the trial court or in this court, that the plaintiff's demand is void because the consideration was founded wholly on an immoral or illegal consideration, the verdict should be set aside. The law will not shut its eyes to the fact that the consideration of a contract is illegal, when that fact appears undisputed from the testimony, and the illegality of the consideration has not been expressly waived.

MARCH 1, 1913.

Complaint; from city court of Dawson—Judge M. C. Edwards. January 29, 1912.

*W. H. Gurr, M. J. Yeomans, R. R. Marlin,* for plaintiff in error. *H. A. Wilkinson,* contra.

### ON REHEARING.

RUSSELL, J. Was Woodley a real-estate agent? What is a real-estate agent? Nothing more nor less than the agent of some one else who has real estate to sell and who helps him to sell it. It is not necessary that the land to be sold shall belong to the principal.

It is immaterial that it belongs to a third party. If the person in question is employed by a representative of the owner to sell a parcel of real estate, or to aid him in selling it, and it is understood and agreed that the owner has no knowledge of his contract of employment, the representative alone is liable upon his contract, and the party employed to aid in effecting the sale is only the agent of the agent, but he is none the less *his* agent. Furthermore, the degree of proof essential to entitle a real-estate agent to recover in an action brought for his commissions has nothing to do with whether a particular person is or is not carrying on the business of a real-estate dealer in this State so as to subject him to liability to the tax, and render him guilty of a misdemeanor if he deprives the State of its just revenue by dodging the payment of this tax. It matters not that one does not succeed in making a single sale as a real-estate agent; if he is in the business and attempting to make sales, he is liable for the tax prescribed by law, provided he is to receive a commission, or other compensation, in case he effects a sale; and he should be none the less liable if he shares in the commissions of an actual sale merely because, by agreement between the parties, he is only to do a part of what is necessary to complete a sale (furnish the prospects), if his introduction of the customer results in a complete sale. If so, then those decisions are all wrong in which it is held that where a real-estate agent introduces a customer, and the owner thereafter sells the property to the person thus introduced or procured, but upon the same terms as were originally stipulated, the owner is liable to the real-estate agent for his commissions. The theory on which these rulings are placed is that although it may be true that but for the owner the sale would not have been made, still, but for the agent, the owner might not have found a purchaser at all. In what respect does the present case differ in principle from those in which these rulings have been made? Clearly there is no difference whatever, except that in the cases to which we refer, the persons who were suing for commissions were engaged in helping the owners to sell, and in the case at bar the plaintiff claims to have contracted with the agent of the seller of the land, for a sufficient consideration, to help him to sell it. It matters not that the commissions for which he sues are contingent. This does not affect an agency for the sale of land; for in a large majority of the adjudi-

cated cases the real-estate agent's commission is conditional in amount and contingent. The fact that one is the agent of a real-estate agent does not prevent him from being himself a real-estate agent in the transaction which is the subject-matter of investigation.

In the motion for rehearing learned counsel for the defendant in error contended that the judgment of this court, reversing the judgment of the court below in this case, was rendered under a misapprehension of the evidence, in that there is no evidence that Woodley was a real-estate agent. If this be true, of course the ruling of this court was totally wrong. In our conception of the exclusive prerogative of the jury to determine all disputed issues of fact, we go even further than that, and declare without hesitation that the judgment heretofore rendered would be wrong if there were any legal testimony upon which the jury could find that Woodley, in this investigation, was not a real-estate agent within the ruling in *Ford* v. *Thomason,* 11 *Ga. App.* 359 (75 S. E. 269). True, Woodley testifies: "I was not a real-estate agent at the time;" but this was merely a conclusion of the witness and wholly without probative value, if by law, and under the facts upon which his conclusion is based it can not otherwise legally be held than that the admitted facts constitute him a real-estate agent within the terms of the act of 1909. The statement of Woodley that he was not a real-estate agent at the time, but that Horsley was a licensed real-estate dealer, and he (Woodley) was co-operating with Horsley, is absolute demonstration of the fact that Woodley, whether liable or not, had not registered and paid the tax required by law; for there is no other reasonable inference upon this point which can be drawn from his denial that he was at the time of the sale a real-estate agent, and that he was depending upon Horsley's license, if license was required.

Let us then see whether or not his conclusion that he was not a real-estate dealer is supported by any evidence. He had a general arrangement with Horsley, by which he was to try and bring Horsley customers in the real-estate business from South Carolina, and, if Horsley sold to them, the commissions upon the sales were to be divided. In pursuance of this agreement Woodley brought a Mr. Sublette to Horsley, and Horsley sold to him the I. P. Cocke place for $40,000. The real-estate dealer's commission was $2,000; Horsley paid Woodley $500, and the suit is brought for the remain-

ing $500. The original indebtedness wa sexpressly denominated, in the statement of account attached to the plaintiff's own petition, as "one-half commissions on sale of Cocke place," and in the amendment the statement of the claim for commissions is merely amplified by stating the name of the purchaser.

Woodley's testimony shows, without contradiction, that he was not only interested in the sale which is directly involved, but that he was carrying on other real-estate transactions in Terrell county; for he testified that he did not turn Sublette over to Horsley until after he himself had failed to induce him to buy Mr. Lowry's farm (in the sale of which Horseley was not interested), and the letter of November 10, from Horsley to Woodley, which Woodley says confirmed a prior verbal agreement, is a general promise on Horsley's part to pay Woodley "one half of my commissions on any sale made to parties brought down by you or influenced by you." It further appears from Woodley's testimony and his letters that he made more than one effort to earn commissions on sales of land which Horsley was handling in other instances than those to which we have already referred. From his letter of December 11 it is very apparent that his agreement with Horsley had interested him in a sale of land to one Rutledge; and Sublette, the purchaser of the land from the sale of which was derived the commissions now involved, testifies that, while Woodley did not especially recommend any particular farm except the Lowry place, he came to Terrell county on Woodley's account.

If a real-estate dealer is one who in consideration of an anticipated commission engages in the business of promoting sales of real estate, and who in thus dealing attempts to sell or aids in selling the land of another, then we think that under the ruling in *Ford* v. *Thomason*, as well as under the act of 1909, Woodley must be held to have been a real-estate dealer, although (basing his conclusion on the fact that his principal business was the pursuit of some other calling) he may erroneously have concluded that he was not. In the *Ford* case we were dealing with a case in which there was a sale completed by the person whom we held to be a real-estate dealer—subject to the provisions of section 978 of the code, because the proof showed that he had made a sale such as would have entitled him to his commission if the statute embodied in that section had never been passed. But it was not intended

to be held, and can not be held, under the ruling in the *Ford* case, that one is not a real-estate dealer unless he has made a sale that will entitle him to recover his commissions under the well-settled rule that he produced a purchaser ready, able, and willing to buy on the terms proposed by the seller. I think the evidence in this case shows even this, for Sublette testifies that he would never have come to Terrell county but for Woodley's influence, and he was accepted as the purchaser by Horsley in behalf of Cocke. But there can be no question that one can carry on the business of a real-estate dealer without actually making more than an attempt to sell, or aiding others (whether the owners or their attorneys or agents) to sell real estate which the owners wish to sell. It is perfectly practicable for a real-estate dealer who does not wish to incur the expenses of a costly office and of an office force, or whose health will not permit indoor confinement, to make an arrangement (and not in any sense a partnership) by which he can legitimately capitalize his acquaintanceship with men and property, and his experience as a business man, by inducing prospective purchasers of real estate to buy certain property which otherwise they might never have bought or even heard of; and this, too, though the actual sale be made by another person who is the agent of the seller, as Horsley was. Transactions in which two real-estate agents are engaged—the one the agent of the seller, and the other the agent of the buyer—are not infrequent. It could hardly be held in such a case that an agent of the buyer would not be entitled to compensation if, upon promise of a certain commission, he sought out and discovered for his principal the name and address of the owner of the property the latter wished to buy, and got the owner's consent to sell it at the price stipulated by his principal, the prospective buyer, and upon the very terms stipulated by him.

It is strenuously urged that, even if under the rule in *Ford* v. *Thomason*, supra, the plaintiff was not entitled to recover his commission—for the reason that he had not paid the tax required by law of real-estate dealers, still the trial judge did not err in overruling the motion for a new trial, because the illegality of the contract or invalidity of the consideration should have been pleaded as a matter of affirmative defense. It is also strongly urged that the point was not made by the plaintiff in error himself until after the ruling of this court in the *Thomason* case. This view is not

controlling with the majority of the court. The general assignment of error, that the verdict is contrary to law and contrary to the evidence, at least demands an investigation of the evidence to determine whether the verdict is in fact so wholly without evidence as to be contrary to law. In a case where it appears undisputed that the consideration of a plaintiff's demand depends wholly upon an act or condition which is illegal or immoral, sound public policy would require the court to declare that there could be no recovery. Certainly this would be true in a case in which the defendant did not expressly waive the failure of consideration. In every case the plaintiff assumes the burden of proving his case, and if he utterly fails in that undertaking, he is not entitled to recover. For myself, I do not see why this case does not fall within the well-settled rule announced in *Evans* v. *Josephine Mills,* 119 *Ga.* 448 (46. S. E. 674), and in similar cases; for if the plaintiff first established his case, he thereafter disproved it. The testimony must be construed most strongly against him.

It matters not that counsel for the plaintiff in error does not call the attention of the court to a specific ruling under which the particular finding is contrary to law, if, as a matter of fact, the court knows that the result reached in the trial was contrary to law. Counsel may not know the law; the courts must know it.

While it is the better practice to raise by plea, as a matter of affirmative defense, the point that the plaintiff's claim is invalid, because it is founded upon an illegal or immoral consideration, still, upon the hearing of a motion for a new trial, the general assignment of error, averring that the verdict is contrary to law and without evidence to support it, is sufficient to demand an investigation of the evidence. If it appears, from a review of the evidence, either in the trial court or in this court, that the plaintiff's demand is void because the consideration was founded wholly on an immoral or illegal consideration, the verdict should be set aside. The law will not shut its eyes to the fact that the consideration of a contract is illegal, when that fact appears undisputed from the testimony, and the illegality of the consideration has not been expressly waived.

The judgment of this court in this case, reversing the judgment of the court below, is adhered to.

POTTLE, J., dissenting. The only defense filed in the trial court

was a general denial of any indebtedness. I do not think the defense that the plaintiff had no license as a real-estate dealer could be raised under the plea of the general issue. A general denial of indebtedness simply raises the question that the defendant does not owe the amount sued for. In the present instance he does owe it, because the plaintiff performed the services which he agreed to perform, and the defendant agreed to pay the sum sued for. But in the argument of counsel in this court it is contended that there is a special reason why the defendant should not be required to pay, or, rather, why the plaintiff should not be permitted to collect, the amount sued for; and that is that he has engaged in the business of a real-estate dealer without having registered with the ordinary and paid the license required by law, and so has been guilty of a misdemeanor. If the defendant wishes to urge the failure of the plaintiff to register and pay the license, as a reason why he should not be allowed to recover, he ought, in my opinion, to set it up by way of special defense. A plea of the general issue did not put the plaintiff on notice that the defendant intended to rely upon any such special defense as the one above mentioned. Apparently the point was made for the first time in the Court of Appeals. It is manifestly an afterthought, and the point was not discovered until after the decision of this court in *Ford* v. *Thomason* (while the present case was pending). Indeed, it was not insisted on in the original briefs of the counsel for the plaintiff in error. In the argument on rehearing attention was called to this fact and counsel for the defendant in error insisted that a point ought not to be raised by this court when it was not raised in the court below, nor even insisted upon in this court by counsel for the plaintiff in error. In this I think the counsel is right, and that the point upon which the court bases the reversal is really not involved in the case.

But further than this, I do not think Woodley is such a real-estate agent as that he was required to obtain a license. This question must be determined solely by the nature of the transaction between Horsley and himself. It makes no difference that Woodley, generally speaking, may have been a real-estate agent, and may have, as to other transactions, engaged in the real-estate business; the question is, was he a real-estate dealer in reference to the particular transaction with Horsley for which he claims the

right to recover for his services? Woodley had no connection with the owner of the land. There was no contract between them, and he could not have maintained an action against the owner for the recovery of commissions. Horsley was the real-estate agent. He simply made an agreement with Woodley that if the latter would introduce him to a purchaser, and he should consummate a sale, he would pay Woodley a certain amount of money equal to one half of his commissions. This, then, was the contract, as shown by the evidence. Woodley had no authority to negotiate a sale. He had no authority even to quote the purchaser a price. He had no authority to enter into any sort of a contract with the purchaser which would bind either Horsley or the owner of the land. Under his contract he was simply to send to Horsley a prospective purchaser. The owner paid but one commission, and that commission was paid to Horsley. If a real-estate agent should say to another, "If you hear of a man who wants to buy a farm, send him to me, and if I trade with him I will pay you $100," I do not think the person who sent the prospective purchaser to the real-estate agent would himself be a real-estate dealer. He is not a partner of the real-estate agent, as was suggested in the argument, but was simply an employee of the agent. He had not the authority of a real-estate agent, nor did he perform the duties of a real-estate agent. His relation more closely resembled that of a servant or an employee of a real-estate agent; and this court has held more than once that one employed to assist a Confederate veteran would be exempt from the payment of a license tax, upon the theory that he himself was not engaged in the business.