S92A1131. CONGDON v. THE STATE.
(424 SE2d 630)

BENHAM, Justice.

Appellant was convicted of murder in 1989. After two prior appearances in this court,[1] the only issue remaining for adjudication is whether the trial court was correct when it determined that the State's explanation for its use of its peremptory challenges to remove all four black venirepersons was racially neutral. *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

The district attorney stated that he struck all four black members of the venire at the behest of the county sheriff, who was the prosecuting and principal witness in the case. The sheriff had asked that the jurors be struck because each of them was a resident of Ringgold, Georgia, where the sheriff had been accused by black citizens of unprofessional and illegal conduct in his investigation of the unsolved 1988 murder of a black woman whose family resided in Ringgold. At

---

[1] This court initially affirmed appellant's conviction in *Congdon v. State*, 260 Ga. 173 (391 SE2d 402) (1990), but refused to consider appellant's claim under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), because appellant is white. Id. at 175. After the U. S. Supreme Court remanded appellant's appeal to this court for reconsideration in light of its decision in *Powers v. Ohio*, 499 U. S. ____ (111 SC 1364, 113 LE2d 411) (1991), we remanded the case to the trial court to provide an opportunity for the State to establish, if possible, the racial neutrality of the peremptory strikes it used against black venire members. The current appeal is from the trial court's determination after remand.

the *Batson* hearing held in 1992, the district attorney described the black population of Ringgold as "extremely small and close knit. . . . They all live in an area that is about five or six or seven city blocks in size . . .," and stated that each of the jurors struck lived within a few blocks of the family of the 1988 murder victim.[2] The district attorney described the sheriff as "not comfortable" with any of the four black Ringgold residents serving on the jury. As a result, the district attorney used his peremptory challenges to remove them from the jury.[3] Several white Ringgold residents served on the jury.

In *Lewis v. State*, 262 Ga. 679 (424 SE2d 626) (1993), we held that a prosecuting attorney acts responsibly when he solicits or accepts input from others concerning the exercise of peremptory challenges, but that the decision to defer to another's desires concerning the exercise of the peremptory challenges does not constitute the required racially neutral, case-related explanation of the exercise of the challenged strikes. In that appeal, we remanded the case to the trial court to permit the prosecutor to present, if possible, the racially neutral, case-related reasons underlying the decision of the person to whom the prosecutor deferred with regard to the exercise of the challenged strikes. In the case at bar, we already have the rationale behind the decision of the sheriff, the person to whom the district attorney deferred. Therefore, it is now incumbent upon us to determine if the trial court correctly ruled that the reason enunciated was racially neutral and related to this case.

The venire members were peremptorily struck because they were black residents of Ringgold and unnamed black residents of Ringgold had harshly criticized the sheriff for his handling of another case. None of the persons struck was asked about his or her knowledge of or participation in the criticism of the sheriff, or about his or her relationship with the family of the victim of the unsolved and unrelated murder. Citing *United States v. Williams*, 936 F2d 1243 (11th Cir. 1991), the State maintains that membership in a discrete community, when residence in that community bears a relationship to the case, is an acceptable, racially neutral reason for striking prospective jurors. In *Williams* and the cases cited therein, the federal appellate courts upheld the peremptory strikes of black jurors who lived in or had a

---

[2] The district attorney stated that "the Black community in Ringgold and the relationship to the [unsolved murder case] is extremely tight." He recalled that prior to appellant's trial (October 1989), the murdered woman's family and other black residents had accused the sheriff of improper activity with regard to the investigation, and that a radio station had broadcast a news account complaining about the status of the case the week of the *Batson* hearing (March 13, 1992).

[3] The district attorney had additional reasons which are not at issue here for striking two of the four black jurors. He admitted that two black venire members were struck solely in response to the sheriff's concerns.

connection with a geographic area that was related to the case being tried. The *Williams* court described this "associational link" as "particularly problematic [raising] serious concerns about the potential for cloaking discriminatory motives in only marginally neutral justifications." Id. at 1247. In the case at bar, the venirepersons were struck for no reason other than that they were black citizens of Ringgold.

> Mere place of residence, or any other factor closely related to race, should not be regarded as a legitimate basis for exercising peremptory challenges without some corroboration on voir dire that the challenged venirepersons actually entertain the bias underlying the use of that factor.

*Lynn v. Alabama*, 493 U. S. 945 (110 SC 351, 352, 107 LE2d 338) (1989) (dissent to denial of a petition for certiorari). Cf. *United States v. Bishop*, 959 F2d 820 (9th Cir. 1992). The State's justification for the exercise of its peremptory challenges was the result of a stereotypical belief[4] that all black Ringgold residents were biased against the sheriff. Inasmuch as the exercise of a peremptory challenge may not be based on either the race of the juror or racial stereotypes held by the party (*Georgia v. McCollum*, 60 USLW 4574, 4579, 505 U. S. ____ (112 SC 2348, 120 LE2d 33) (1992)), we are compelled to reverse the trial court's determination that the reason proffered by the State for the exercise of its peremptory challenges was racially neutral, and to remand for a new trial.

*Judgment reversed. Clarke, C. J., Hunt, P. J., Fletcher, Sears-Collins, JJ., and Judge William F. Blanks concur; Hunstein, J., not participating.*

DECIDED JANUARY 22, 1993.

*Gleason, Davis & Dunn, John W. Davis, Jr., David J. Dunn, Jr.,* for appellant.

*Ralph Van Pelt, Jr., District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines, Assistant Attorney General,* for appellee.

---

[4] A "stereotype" is defined in Webster's Third New International Dictionary (unabridged) (1971) as:
a standardized mental picture held in common by members of a group and representing an oversimplified opinion, affective attitude, or uncritical judgment (as of a person, a race, an issue, or an event).