S93A1925, S93X1926. ZANT v. MOON; and vice versa.

(440 SE2d 657)

CLARKE, Chief Justice.

The facts of this case are set out in our opinion on direct appeal, *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988). Larry Eugene Moon was convicted of murder and armed robbery in Catoosa County and sentenced to death. Moon filed an application for writ of habeas corpus on January 13, 1992, in the Superior Court of Butts County. An evidentiary hearing was held on March 15, 1993, and the parties filed briefs thereafter. Petitioner asserted fifty-one grounds for relief, and the trial court granted relief on three issues: (1) the State's improper use of a peremptory strike during jury selection; (2) the incomplete investigation of the Petitioner's mental condition and the resulting lack of mitigating evidence at the sentencing phase; and (3) the errors concerning the DeJose incident, see id. at 749, introduced in aggravation of punishment during the sentencing phase of the trial. The State appeals. The habeas court reserved ruling on Petitioner's remaining claims. From those remaining claims, Petitioner appeals.

*Case No. S93A1925*

1. In his first appeal to this court, Moon argued that the prosecutor's use of a peremptory strike to excuse the only black juror on the panel violated *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). We held that since Moon is white, he lacked standing to complain of the prosecutor's peremptory challenge of a black juror. *Moon*, 258 Ga. at 754 (10). While Petitioner's application for certiorari was pending before the United States Supreme Court, that Court decided *Powers v. Ohio*, 499 U. S. 400 (111 SC 1364, 113 LE2d 411) (1991), holding that a white defendant has standing to challenge the prosecution's use of a peremptory challenge to excuse a black juror. Because *Powers* was decided before Moon's petition for certiorari was dismissed, Petitioner is entitled to the retroactive effect of that decision. *Griffith v. Kentucky*, 479 U. S. 314 (107 SC 708, 93 LE2d 649) (1987). Petitioner raised the *Batson* claim before the habeas court. That court ruled that this case presents the same facts as *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993),[1] and granted relief for Petitioner.

On appeal, Moon argues that at the habeas court level, the State argued only that his *Batson* claim was procedurally barred and therefore the State's arguments addressing the merits of the *Batson* claim

---

[1] As the habeas court points out, ironically, the prosecutor in *Congdon* was Moon's trial counsel. He relied on the State's explanation in Petitioner's case to support his excusing the juror in *Congdon*.

are waived on appeal. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled upon by the trial court. *Velkey v. Grimes,* 214 Ga. 420, 421 (105 SE2d 224) (1958); *Butler v. State,* 172 Ga. App. 405 (1) (323 SE2d 628) (1984). However, in its supplemental return and answer, filed on March 16, 1993, the State specifically denied Petitioner's claim that the State improperly excused a juror based on impermissible racial motivations. Furthermore, the trial court ruled on the substantive issue of the *Batson* claim.

> While reviewing courts will not consider questions which the record does not show were raised and determined in the trial court [cits.], in the absence of a waiver all questions will be considered as having been raised and determined in the trial court as judge and jury, which were made by the pleadings and supported by the undisputed evidence, even though the application of some appropriate legal principle might not have been then specifically urged in support of a legal contention. It is "not only within the authority of the [appellate] court, but it is its duty, when a case is before it on a direct writ of error complaining of a judgment, to reverse the judgment when it is apparent from the record that in point of law the action was not maintainable, if the judgment was in favor of plaintiff, or the plea constituted no defense, if the judgment was in favor of the defendant." *Kelly v. Strouse,* 116 Ga. 872 (5), 887 (43 S.E. 280); *Horsley v. Woodley,* 12 Ga. App. 456 (2), 461 (78 S.E. 260).

*Investors Fin. Co. v. Hill,* 194 Ga. 236, 242 (21 SE2d 220) (1942). The State did not waive the substantive arguments of the issue on appeal because the habeas court ruled on the merits of the *Batson* claim.

On the jury panel for Moon's trial there was only one African-American, Ms. Florence Harris. The prosecutor learned that Ms. Harris knew defense counsel, who had done legal work for her brother and father, and that she saw him once or twice a week. Upon further questioning, Ms. Harris revealed that she had a deep-seated, conscientious objection to the death penalty. When the prosecutor asked if the facts justified a death sentence, would her personal beliefs override the facts so that she could not impose the death penalty, Ms. Harris responded, "Yes." Defense counsel then asked her if she could put aside her convictions and vote for the death penalty if the facts and the judge's instructions warranted it. She then responded that she could vote for the death penalty if the situation was appropriate.

The prosecution excused Ms. Harris. Counsel for Moon objected, noting that Ms. Harris was the sole African-American on the jury

panel. The trial court allowed the peremptory strike because

> she vacillated so much, that certainly she started out saying she would not impose the death penalty . . . and only after [defense counsel] threw a whole lot of rehabilitation by the defense that she became eligible to serve.

Before the jury was sworn, the trial court held an evidentiary hearing and heard arguments from defense counsel that the strike was racially motivated and that the State should be required to provide racially-neutral reasons for the strike. The prosecutor responded that he excused Ms. Harris because she vacillated in giving her answers regarding the death penalty. Furthermore, the prosecutor said that defense counsel had represented both Ms. Harris's father and brother[2] and the potential juror seemed confused by the sometimes intimidating questions of defense counsel. The prosecutor further noted that as the result of an ongoing murder investigation, political controversy had created a great deal of anger and hostility in the black community toward the Sheriff's office and that Ms. Harris's father had been interviewed as a witness in the murder investigation and he believed her family may have been in the forefront of the protests. In conclusion, the prosecutor noted, he would excuse any potential juror under those circumstances, whatever their race. Finally, he noted that he had a personal feeling that Ms. Harris seemed hostile to the state. Finding that there had been no showing of any improper action by the state, the trial court denied the *Batson* challenge. The habeas court disagreed, finding that this case was controlled by this court's decision in *Congdon* and that the prosecutor's actions violated *Batson.*

The court erroneously held that this case was controlled by *Congdon.* In *Congdon,* we held that the *Batson* rule was violated where "the venirepersons were struck for no reason other than that they were black citizens of Ringgold." *Congdon,* 262 Ga. at 685. It is apparent from the record that the evidence introduced at trial showed that the prosecutor cited race-neutral reasons for excusing the juror. Unlike *Congdon,* the juror was struck not because she was a black citizen of Ringgold but because her father had been interviewed as a witness in a murder case from which much hostility had been publicly expressed towards the local law enforcement community. Thus, the prosecutor's justification for striking the juror was not the result of a stereotypical belief that all African-American residents of Ringgold

---

[2] The prosecutor did not know the matters on which defense counsel represented Ms. Harris's family, but noted that both lawyers had extremely active criminal practices and that he could not take the chance that these had been criminal matters.

were biased against the sheriff, but the prosecutor's actual knowledge of her family's connection with the underlying controversy. We find that the trial court had sufficient evidence to conclude that the peremptory strike was not racially motivated. We therefore reverse the habeas court.

2. The habeas court also found that Petitioner's trial counsel were ineffective at the sentencing phase of the trial. Two lawyers, appointed by the court, represented Petitioner at trial. They hired a private investigator but did not use him to search for mitigating evidence. Petitioner's mother and sister provided names of friends to contact. She discouraged counsel from looking into Petitioner's juvenile and school records since they showed a history of trouble. Trial counsel made a decision not to rely on those records to avoid bringing his criminal history into issue. Petitioner was generally cooperative with counsel but at times appeared reticent.

Trial counsel hired a psychologist, Dr. Howard Albrecht, and a psychiatrist, Dr. Dave Davis, to examine Moon. Most of the background information that they gave to Dr. Davis came from Moon's mother and sister. Dr. Davis diagnosed Moon as having an antisocial personality disorder and determined there were no signs of brain damage. Trial counsel decided not to pursue the issue any further because Dr. Davis felt his testimony could only hurt the defendant.

The habeas court found that trial counsel did a reasonable job preparing pretrial motions and representing Petitioner in the guilt-innocence phase of the trial; however, the court concluded that trial counsel failed to provide effective assistance during the sentencing phase. Particularly important to the court was the lack of mitigating evidence that would have been helpful to the experts' evaluation of Petitioner's psychological condition. The court was persuaded by the affidavits of Dr. Howard Albrecht, who stated that the evaluation and research of Petitioner's psychological history were deficient, and Dr. Henry Dee who detailed how Petitioner's counsel should have researched and presented his medical condition. The habeas court further noted that little mitigating evidence was presented to the jury by counsel, who testified that they focused mainly on the guilt-innocence phase of the trial. Trial counsel did not use the investigator to find mitigation witnesses, and the attorneys only talked to Petitioner's immediate family and several friends.

Of primary importance to the habeas court's decision is the second diagnosis of Moon as suffering from "organic affective syndrome or an organic personality syndrome, and an organic amnestic syndrome." The psychiatric experts now believe the first diagnosis was erroneous because of a lack of background information. The habeas court did not fault trial counsel for failing to correct a misdiagnosis; however, it did find that the failure of trial counsel to prepare ade-

quate mitigating evidence that would have been critical to the psychiatrist's diagnosis brought counsel's performance below the standard required by the constitution. The habeas court ruled that trial counsel was ineffective. We reverse, however, finding that trial counsel made reasonable strategic decisions regarding mitigating evidence.

To prove a claim of ineffective assistance of trial counsel, a criminal defendant must show both deficient performance by counsel and a likelihood that counsel's deficient performance prejudiced the defense, depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). In proving deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Judicial scrutiny of counsel's performance must be highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional representation. Id. at 689. We review ineffective assistance of counsel claims in light of the facts of the particular case as of the time of counsel's conduct. Counsel is also presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690.

Trial counsel relied mainly on information obtained from Petitioner's mother and sister, who were very cooperative. They provided names of people who knew Moon. Although trial counsel's investigator tried to contact Moon's ex-wife, she was not helpful. Trial counsel also relied on background information obtained from friends who knew Moon. After discussing Moon's juvenile and school records, trial counsel opted not to pursue them further because they would show that Moon had been in trouble as a juvenile. Because of their decision to pursue an allegation under the Interstate Agreement on Detainers Act, trial counsel were working under a tight schedule. After obtaining information on family history, trial counsel decided not to pursue the psychiatric diagnosis, believing that it might hurt their case. Based on their review of the case, counsel felt that the odds of Moon receiving a death sentence were extremely high if convicted. As a result, they focused their attention on the guilt-innocence phase of the trial.

At the sentencing phase, counsel planned to call Moon's mother, his sister, his cousin, and someone that had grown up with Moon. During his sister's emotional testimony, Moon became very angry. His counsel could not calm him down. During a recess, Moon only agreed to allow his sister's testimony to go on if counsel would not call his mother as a witness.

The record at the habeas hearing suggests that trial counsel could have made a more thorough investigation; however, in considering ineffective assistance of counsel claims, " 'we address not what is pru-

dent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U. S. 776, 780 (107 SC 3114, 97 LE2d 638) (1987). Trial counsel made a strategic decision in not further pursuing background information for the sentencing phase. Furthermore, even if trial counsel's conduct fell below constitutional standards, Petitioner must also prove that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694. The psychological background information produced by Petitioner's counsel does not paint an entirely sympathetic picture of Moon. His psychological problems could persuade a jury that he was even more dangerous than the ordinary criminal. This is not a case in which no mitigating evidence was presented in the sentencing phase. E.g., *Burger v. Kemp*, supra. Trial counsel presented evidence that Moon was, at times, a loving person, had given his time to youth sports activities, and had a dismal childhood. Moon's juvenile record would have opened Petitioner to extensive cross-examination on his prior record. Extensive testimony of Petitioner's abusive childhood would only highlight the fact that his sister suffered similar abuse and yet did not become a murderer. See *Hance v. Kemp*, 258 Ga. 649 (373 SE2d 184) (1988).

Trial counsel admitted that a report that Moon was emotionally unstable would not likely have changed the outcome. Petitioner has not shown a reasonable probability that, if adduced at trial, the psychiatric and background evidence presented in the habeas hearing would have caused the sentencer to conclude "that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U. S. at 695.

At the sentencing hearing, the state introduced evidence of a homicide committed by Moon in Tennessee. A witness, Daryl Ehrlanger, testified that she and her boyfriend, Tommy DeJose, accepted a ride from Moon. She further related that she escaped after Moon stopped the car and shot DeJose in the head. According to trial counsel, Ms. Ehrlanger's testimony was powerful and probably the most damaging to Moon's sentencing case. In its order granting relief to Petitioner, the habeas court noted that Moon's new counsel had uncovered substantial evidence that Ehrlanger had lied and that Moon killed DeJose in self-defense. Petitioner alleges that trial counsel was ineffective in failing to counter the State's case in aggravation. Petitioner argues that the testimony of Daryl Ehrlanger on the DeJose incident would have been avoided had trial counsel adequately investigated the incident. The habeas court characterized Ehrlanger's testimony as "by all accounts, the most damaging testimony against petitioner." Although the habeas court ruled that counsel's conduct was unprofessional and violated Petitioner's constitutional rights, we re-

verse. We find that Petitioner has failed to show that there was a reasonable probability that, but for trial counsel's unprofessional errors, the jury would have reached a different result.

During the sentencing phase, the State called David Davenport of the Tennessee Bureau of Investigation. Mr. Davenport failed to reveal that the TBI had run a criminal background check on DeJose. This check revealed that DeJose had served 29 months in prison for an armed robbery conviction. Mr. Davenport failed to reveal that DeJose was a fugitive from the state of New York and that Ehrlanger was aiding DeJose in his escape from imprisonment. Furthermore, Mr. Davenport failed to reveal that DeJose's blood alcohol level was .17 at the time of his death and that the autopsy revealed signs of recent drug use. Finally, Mr. Davenport failed to reveal that Ehrlanger had failed a TBI lie detector test.

In close cases, where the evidence presented by the state is thin, mistakes made by trial counsel take on greater significance. Such is not the case here. Ehrlanger's testimony was not the only evidence submitted in aggravation. The jury had already found Moon guilty of murdering Ricky Callahan in the commission of an armed robbery. The State also introduced evidence that prior to killing Ricky Callahan in Georgia, Moon had shot and killed Jimmy Hutcheson in Tennessee. The State also presented evidence that Moon robbed the Peeper's Adult Bookstore at gunpoint and kidnapped Terry Elkins, taking him into Georgia, sodomizing him, and threatening to kill him if he refused to submit. Less than a week after the DeJose incident, Moon robbed a convenience store at gunpoint, taking over $900 and the owner's .357 Magnum handgun. The jury had also been presented with prior convictions of the Petitioner, including an assault with a razor, assault with a pistol, four burglaries, and an escape after being convicted for assault with intent to murder.

The evidence presented by the State, even ignoring the DeJose incident, shows the Petitioner's proclivity toward violence. We disagree with the finding of the habeas court that there is a reasonable probability the jury would have reached a different result. The Petitioner carries the burden of showing a reasonable probability that, but for the alleged ineffectiveness of counsel, the result of the hearing would have been different. The evidence at the habeas hearing does not support Petitioner's burden, and we reverse.

3. Finally, the habeas court granted relief for Petitioner finding that the state improperly failed to disclose the exculpatory evidence in the DeJose incident. See Division 2, supra. Petitioner argued to the habeas court that this exculpatory information was in the possession of the State and that his death sentence should be overturned as a result of this violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

Where a prosecutor suppresses evidence favorable to the defense, the State violates the defendant's due process rights. *United States v. Agurs*, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976); *Brady*, supra. The defense bears the burden of showing (1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. See *United States v. Meros*, 866 F2d 1304 (11th Cir.), cert. denied 493 U. S. 932 (1989). The habeas court ruled that once the State decided to use the Tennessee evidence and the Tennessee law enforcement officers as witnesses, it had a duty to provide all *Brady* material associated with that incident. We disagree. The State was required by law to turn over all exculpatory material *in its possession*. Because the defendant failed to prove that the information was in the hands of the prosecutors, it was entitled to no relief on *Brady*.

Petitioner argues that the TBI officer was made an integral part of the prosecution team because he voluntarily testified on behalf of the State at the sentencing phase. However, the law does not support this contention. *Brady* requires information to be revealed only when it is "possessed by the prosecutor or anyone over whom the prosecutor has authority." *Meros*, 866 F2d at 1309. We will analyze whether a person is on the prosecution team on a case-by-case basis, reviewing the extent of interaction, cooperation, and dependence of the agents working on the case. There is no evidence that Tennessee law enforcement officials and Georgia prosecutors engaged in a joint investigation of the DeJose incident. The agencies did not share resources or labor. The only role played by the TBI was of providing information to the Georgia courts via one of its agents. There is no evidence that the Tennessee agents were under the direction or supervision of Georgia officials.

In conclusion, we find that the trial court erred in granting relief for Petitioner Moon on each of the three enumerated grounds.

### Case No. S93X1926

4. After granting relief on the three issues discussed above, the habeas court deferred ruling on the remaining habeas claims. Petitioner raises these issues on cross-appeal. Because there was no decision in the habeas court below, these issues are not ripe for appeal. We therefore remand for further proceedings not inconsistent with this opinion.

*Judgment reversed in Case No. S93A1925. All the Justices con-*

*cur, except Sears-Collins and Carley, JJ., who concur in the judgment only; and Benham, J., who dissents. Judgment remanded in Case No. S93X1926. All the Justices concur.*

BENHAM, Justice, dissenting in part.
Because I believe the habeas corpus court was correct in finding a violation under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), I must respectfully dissent to the reversal of that ruling in Division 1 of the majority opinion. Here, as in *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993), a juror was excluded in part because she is a member of a specific African-American community. That is not a race-neutral reason for exercising a peremptory challenge and the habeas corpus court was correct in so ruling.

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 31, 1994.

*Michael J. Bowers, Attorney General, Susan V. Boleyn, Mary Beth Westmoreland, Senior Assistant Attorneys General,* for appellant.
*Smith, Currie & Hancock, Charles W. Surasky, Frederick L. Wright, Frederick W. Stearns, M. Craig Hall, Brian Mendelsohn,* for appellee.