S91P1642. THARPE v. THE STATE.
(416 SE2d 78)

WELTNER, Presiding Justice.

Keith Leroy Tharpe was convicted by a jury in Jones County of malice murder and two counts of kidnapping with bodily injury. Finding the presence of three statutory aggravating circumstances, see OCGA § 17-10-30, the jury sentenced Tharpe to death for the murder. He appeals. We affirm.[1]

Tharpe's wife left him on August 28, 1990 and moved in with her mother. Following various threats of violence made by the defendant to and about his wife and her family, a peace warrant was taken out against him, and the defendant was ordered not to have any contact with his wife or her family. Notwithstanding this order, Tharpe called his wife on September 24, 1990 and argued with her, saying if she wanted to "play dirty," he would show her "what dirty was."

On the morning of the 25th, his wife and her sister-in-law met Tharpe as they drove to work. He used his vehicle to block theirs and force them to stop. He got out of his vehicle, armed with a shotgun and apparently under the influence of drugs, and ordered them out of their vehicle. After telling the sister-in-law he was going to "f--- you up," he took her to the rear of his vehicle, where he shot her. He rolled her into a ditch, reloaded, and shot her again, killing her.[2]

Tharpe then drove away with his wife. After unsuccessfully trying to rent a motel room, Tharpe parked by the side of the road and

---

[1] The crime occurred on September 25, 1990. Tharpe was arrested the same day. He was tried on January 2 through January 10, 1991. He filed a motion for new trial on January 19, 1991. The motion was denied on August 15, 1991. The case was docketed in this court on September 10, 1991. After extensions of time were granted to the parties, the case was argued orally on January 22, 1991.

[2] The wife could not remember if the sister-in-law had been shot twice or three times. However, the autopsy established that the victim had been shot three times — once in the arm, once in the chest and once in the head.

raped his wife. Afterward, he drove to Macon, where his wife was to obtain money from her credit union. Instead she called the police.

1. The evidence supports the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Haynes v. State*, 159 Ga. App. 34 (1) (283 SE2d 25) (1981).

2. There is no merit to any of Tharpe's constitutional attacks on the Unified Appeal Procedure. See, e.g., *Meders v. State*, 260 Ga. 49 (9) (389 SE2d 320) (1990).

3. Tharpe was not entitled to review the prosecution's jury records. *Wansley v. State*, 256 Ga. 624 (2) (352 SE2d 368) (1987).

4. During the trial, a hearing was conducted outside the presence of the jury concerning possible communications between a jailer and some of the jurors.

(a) Tharpe testified first, soon drawing a hearsay objection. The court implicitly overruled the objection, stating that although the hearsay might have no probative value, it was a "foundation for what may come later on." Later, Tharpe testified that the jailer had questioned him about the crime. When his attorney asked him whether he had been advised of his right to remain silent, the state objected that "this was a motion for mistrial based on misconduct with the jury," not any *Miranda* issue. The court did not rule on this objection because Tharpe's attorney withdrew the question, stating he would "just abandon this line for right now."

Tharpe now argues that "the trial court twice cut off the defense questioning of [Tharpe], unconstitutionally chilling the exercise of his right to testify on his own behalf." The court at no time cut off defense questioning. There was no error.

(b) Tharpe next presented testimony of two inmates who stated that they heard the jailer say it was his job to "pick up some of the jurors that support the death penalty." The state called the jailer to the stand. He denied having any contact with any of the jurors. He testified that he did not "pick them up" or "haul them around," and had not told any of the inmates that he had.

The trial court found that no contact had occurred and denied Tharpe's motion for mistrial. The court's finding was not, as Tharpe contends, contrary to the evidence, and the denial of a mistrial was not erroneous.

5. Tharpe urges error in the denial of his motion for change of venue under *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991). Less than 12 percent of the venire was excused because of the effect of pre-trial publicity. No "actual prejudice" has been shown, *Lee v. State*, 258 Ga. 82 (9) (365 SE2d 99) (1988) and, under the rules applicable to this trial, there was no error.

6. Tharpe contends the prosecutor discriminated racially in the exercise of his peremptory challenges. See *Batson v. Kentucky*, 476

U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Of the qualified venire of 42 jurors from which the jury was selected, 9, or 21 percent were black. The prosecutor used nine of his ten allotted peremptories, striking five blacks and four whites. Tharpe used 17 of his 20 allotted peremptories, striking 16 whites and 1 black. Two of the twelve members of the jury (16.67 percent) were black. (One of the two alternate jurors also was black.)

Tharpe contends that these numbers, conjoined with the prosecutor's "history of racially discriminatory jury practices" as "documented" in *Horton v. Zant,* 941 F2d 1449 (11th Cir. 1991), established a prima facie case of racial discrimination. We find that the prosecutor successfully has rebutted that charge.

The prosecutor struck four whites and three of the five blacks because they were opposed conscientiously to the death penalty. As we have held, reasons falling short of justifying an excusal for cause might well justify the exercise of a peremptory strike. *Hall v. State,* 261 Ga. 778, 780 (2 a) (415 SE2d 158) (1991). A prospective juror's conscientious aversion to the imposition of the death sentence is an adequate reason to justify a peremptory strike in a death-penalty case. *Foster v. State,* 258 Ga. 736 (2) (374 SE2d 188) (1988).

The state struck one of the two remaining black prospective jurors because she had served recently on a jury in another murder case, and had voted to acquit that defendant, who was represented by the defense attorney involved in this case. This, too, was a justifiable reason for striking her.

The remaining prospective juror was struck for several reasons. One was for stating that she had attended three years of elementary school, four years of junior high school and twelve years of high school. Her responses on the questionnaire as well as her demeanor during the voir dire examination showed "a great deal of immaturity." Moreover, "she kept making close eye contact with the defendant all during the questioning."

It can be argued that explanations by the state as to the striking of black jurors — who allegedly make minor mistakes on the jury questionnaire; or show signs of immaturity; or demonstrate certain aspects of eye contact — reflect certain stereotypical attitudes as to particular groups. Any such explanations should be given additional scrutiny by the trial court before they are found acceptable. However, the trial court determined that the prosecutor had presented legitimate reasons for his challenges. We do not find this determination clearly erroneous. *Hightower v. State,* 259 Ga. 770 (11) (386 SE2d 509) (1989).

7. Previous difficulties between Tharpe and his family were admitted properly to show Tharpe's bent of mind toward them. *Wright v. State,* 184 Ga. 62 (8) (190 SE 663) (1937). These difficulties were

connected logically to the crime on trial. *Hall v. State*, supra, 261 Ga. at 781 (6).

The trial court sustained Tharpe's objection to the unsolicited opinion of one witness that Tharpe was "crazy" and instructed the jury to disregard the answer. No impermissible "character" evidence was admitted here, and the trial court did not abuse its discretion by denying Tharpe's motion for mistrial. *Sabel v. State*, 250 Ga. 640 (5) (300 SE2d 663) (1983).

8. As Tharpe did not object on constitutional grounds to the introduction into evidence at the sentencing phase of a prior conviction based on a guilty plea (for violating the habitual offender law), any claim that the guilty plea was not entered knowingly, voluntarily and intelligently is waived. *Spencer v. State*, 260 Ga. 640 (10 b) (398 SE2d 179) (1990). The admission of this plea would not rise to the level of harmful error under the circumstances surrounding it.

9. Tharpe has failed to suggest any possible harm arising out of the court reporter's failure to transcribe the charge conference at the guilt phase.

10. There were no errors in the court's instructions on reasonable doubt, *Potts v. State*, 261 Ga. 716 (14) (410 SE2d 89) (1991), nor is there any infirmity in the instruction that the jury should not be concerned at the guilt-phase of the trial with the effect of its verdict. See *Walker v. State*, 254 Ga. 149, 158 (327 SE2d 475) (1985).

11. Tharpe contends the court's charge on voluntary intoxication was incomplete. The trial court's instructions were proper.

12. Tharpe did not object at trial to the instruction, "Whatever your verdict is as to penalty, it must be unanimous." We have held that such an instruction is proper. *Potts v. State*, supra, 261 Ga. at 724 (17).

13. The § b (7) statutory aggravating circumstance is not unconstitutionally vague or overbroad as applied. *Taylor v. State*, 261 Ga. 287 (13) (a) (404 SE2d 255) (1991).

14. Qualification of prospective jurors relative to the death penalty is not unconstitutional. *Ford v. State*, 257 Ga. 461 (3) (360 SE2d 258) (1987).

15. Because Tharpe seized his wife in Jones County, venue for prosecuting the charge of kidnapping with bodily injury was proper in Jones County, even if the bodily injury were inflicted in Monroe County. *Potts v. State*, supra, 261 Ga. at 720 (2).

16. Tharpe now complains about the prosecutor's closing arguments at both the guilt and sentencing phases of the trial. He did not object at trial to any portions of the state's closing argument at the guilt phase, and objected at the sentencing phase only to the prosecutor's characterization of the defendant's motive as "depraved" (which was a permissible inference from the evidence). We have held:

> The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error. See, e.g., UAP § (A) (2) (d). When no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial. [Cit.] [*Todd v. State*, 261 Ga. 766 (2 a) (410 SE2d 725) (1991).]

We have reviewed the complaints, and find nothing so harmful as to warrant relief.

17. As we held in *Lonchar v. State*, 258 Ga. 447, 453 (6) (369 SE2d 749) (1988):

> The state was not precluded from urging the presence of OCGA §§ 17-10-30 (b) (2) and (b) (7) simply because aggravated battery is a fact supporting both circumstances. [Cit.]

18. During the voir dire examination, Tharpe moved, outside the presence of any jurors, to strike a prospective juror for cause. The court questioned the wisdom of the defendant's motion, based on something in the juror's family background which, in the court's opinion probably would make her "a good juror for the defense." The court declined to disclose what he knew about the juror's background. Now, the defendant contends the court should have recused itself to "avoid all impropriety and appearance of impropriety."

While the comment appears inappropriate, it does not warrant recusal, or other relief.

19. The murder victim's husband was the first person to arrive at the scene of the crime and to discover her body. It was not error to allow him to identify photographs of the crime scene. Compare *Mincey v. State*, 251 Ga. 255 (11) (304 SE2d 882) (1983).

20. At the sentencing phase of the trial, Tharpe objected to evidence of his felony conviction for driving a motor vehicle after having been declared a habitual traffic violator, see OCGA § 40-5-58 (c), on the ground that the conviction might "suggest to the jury this man is a lifetime career criminal" rather than merely a habitual traffic violator. The state noted that the terms of the accusation specified "exactly" what it was. Moreover, not only could counsel argue the meaning of the conviction, the state agreed with the defense that the court could include in its instructions a definition of the offense.

No written request to charge was submitted on this subject. The charge that Tharpe now suggests should have been given was argumentative, and there was no error.

21. Tharpe has not shown that the state suppressed any information concerning criminal records of any of its witnesses. *Rini v. State,* 236 Ga. 715, 718 (225 SE2d 234) (1976).

22. The jury found the following statutory aggravating circumstances:

1. The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury of Jaquelin Freeman.

2. The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury of Migrisus Tharpe.

3. The offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim.

See OCGA § 17-10-30 (b) (2) and (b) (7).

(a) The evidence supports the jury's finding as to the kidnapping with bodily injury of the murder victim. See Division 1, above.

(b) The evidence supports the jury's finding as to the kidnapping with bodily injury of Tharpe's wife. *Childs v. State,* 257 Ga. 243 (15) (357 SE2d 48) (1987). Although the death penalty may not be imposed for the offense of kidnapping with bodily injury unless the victim is killed, kidnapping with bodily injury is a capital felony that may be considered by the jury as a § b (2) statutory aggravating circumstance supporting a death sentence for the offense of murder. *Crawford v. State,* 254 Ga. 435, 440-441 (5) (330 SE2d 567) (1985).

(c) The evidence supports the jury's § b (7) finding. The jury was entitled to conclude from the evidence that the defendant "maliciously" caused the bodily harm to the victim and that his first two shots were not accidental.

23. As noted above, we conclude that the evidence supports the jury's findings of statutory aggravating circumstances. OCGA § 17-10-35 (c) (2). We do not find that Tharpe's death sentence was imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). Tharpe's death sentence is neither excessive nor disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur; Sears-Collins, J., not participating.*

APPENDIX.

*Lynd v. State*, 262 Ga. 58 (414 SE2d 5) (1992); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Alderman v. State*, 254 Ga. 206 (327 SE2d 168) (1985); *Wilson v. State*, 246 Ga. 62 (268 SE2d 895) (1980); *Redd v. State*, 242 Ga. 876 (252 SE2d 383) (1979).

BENHAM, Justice, concurring.

After reviewing appellant's assertion that the trial court erred by allowing the victim's husband to identify her using photos of her body as he found it, addressed in Division 19 of the majority opinion, I am of the opinion that this court should adopt a rule well-established in Florida:

[A] member of the deceased victim's family may not testify for the purpose of identifying the victim where nonrelated, credible witnesses are available to make such identification. [*Welty v. State*, 402 S2d 1159, 1162 (Fla. 1981).]

The basis for adoption of such a rule is "to assure the defendant as dispassionate a trial as possible and to prevent interjection of matters not germane to the issue of guilt." Id. The emotionally-charged atmosphere brought about when a family member views a photograph taken of a dead loved one can result in conduct that has a reasonable probability of interfering with the jury's verdict and may serve as the basis for reversible error. See *Stahl v. State*, 749 SW2d 826 (Tx. Cr. App. 1988). As guardians of the law, we must do all we can to insulate jurors from emotional distractions that might result in a verdict based on sympathy rather than on the evidence. *Jones v. State*, 569 S2d 1234 (Fla. 1990). Adoption of the rule I propose would remove the main source of emotional distraction from every homicide case tried in Georgia. The proposed rule is not applicable to the case at bar, however, because the testimony of the victim's husband, the person who discovered the victim's body, was necessary to establish that the scene as depicted in the photos taken sometime later by police photographers was that which he had discovered.

DECIDED MARCH 17, 1992 —
RECONSIDERATION DENIED APRIL 1, 1992.

*Charles D. Newberry, Shane M. Geeter,* for appellant.
*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,*

*Robert D. McCullers, Staff Attorney,* for appellee.