## S92A1489. LEWIS v. THE STATE.
### (424 SE2d 626)

BENHAM, Justice.

Appellant was indicted for and convicted of the malice murder and the felony murder of his former wife, and the malice murder and felony murder of a visitor to his former wife's apartment.[1]

1. Although appellant does not contest the sufficiency of the evidence presented against him, our review of the record reveals that the State presented sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of the crimes charged. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). However, as the State concedes, the trial court erred when it imposed sentences upon the convictions for both the malice murder and the felony murder of each victim. See *Wade v. State,* 258 Ga. 324 (2) (368 SE2d 482) (1988); OCGA § 16-1-7 (a). The case is remanded in order that the felony murder convictions and the sentences imposed thereon be vacated.

2. Appellant contends the trial court also erred when it overruled his claim that the prosecutor systematically excluded black venirepersons from the petit jury. See *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The district attorney used seven of the eight peremptory strikes he exercised to exclude black citizens from jury service. The jury that tried appellant consisted of eleven white members, and one black member. Appellant takes issue only with the explanation proffered by the State for striking two of the black venirepersons: that the widow of one of the victims did not want either of them on the jury.[2]

---

[1] The crimes were committed on August 9, 1991, and appellant was indicted on September 24. He was tried on March 23-25, 1992, convicted on all four counts, and given a sentence of life imprisonment for each conviction. Appellant filed a motion for new trial on April 22, which was amended on July 21 and denied on July 30. His notice of appeal was filed on July 31. The appeal was docketed in this court on September 1, 1992, and submitted for decision without oral argument on October 10.

[2] When explaining the exercise of his peremptory strikes now challenged, the district attorney stated:

The State — I personally had no reason to strike [a black female juror] with the exception that in counsel with Ms. Daniels [the victim's widow], Ms. Daniels did not feel that she would be a good juror in this particular case. And going on her assessment of the person as a juror, the State struck [the black female juror]. . . . [T]he State had no independent reason of its own to strike [a black male juror]. Again, in consultation with Ms. Daniels . . . Ms. Daniels indicated she did not wish [the black male juror] to be on the jury. I point out, again, that Ms. Daniels is a black female.

The initial question is whether appellant established a prima facie case of discrimination to trigger the prosecutor's duty to give racially neutral reasons for the exercise of his challenged peremptory strikes. However,

[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. [*Hernandez v. New York*, 500 U. S. ____ (111 SC 1859, 1866, 114 LE2d 395) (1991).]

Therefore, since the issue of whether appellant established a prima facie case is moot, we address the issue of the sufficiency of the district attorney's explanations for the exercise of the two peremptory challenges.

Jury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people. [Cit.] It "affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law." [Cit.] Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process. [*Powers v. Ohio*, 499 U. S. ____ (111 SC 1364, 1369, 113 LE2d 411) (1991).]

A criminal defendant has a constitutional right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria (*Batson v. Kentucky*, supra at 85-86), and an individual juror has the right not to be excluded from a jury on account of race. *Powers v. Ohio*, supra at 1370. "[T]he exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." *Georgia v. McCollum*, 60 USLW 4574, 4579, 505 U. S. ____ (112 SC 2348, 120 LE2d 33) (1992).

In order for the State to carry its *Batson* burden, the prosecutor had to explain his striking of the jurors at issue by articulating a racially-neutral reason related to the particular case. *Batson v. Kentucky*, supra at 98. The prosecutor "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising his chal-

---

She's a very prominent member of our community. Her husband [was] a very prominent official. And she asked us to remove [the black juror] from the panel, which we did.

lenges. [Cit.]" Id. n. 20. Although the prosecuting attorney acts responsibly when he solicits or accepts input from colleagues, prosecuting witnesses, victims, and victims' family members concerning the exercise of peremptory challenges, the State does not fulfill its burden to provide racially-neutral reasons by stating that its peremptory challenges were exercised in deference to the wishes of an individual concerned about the case. In such a situation, the State must set forth a racially-neutral, case-related reason underlying the decision of the person to whom the prosecutor deferred.[3] In the case at bar, the prosecutor never enunciated a racially-neutral rationale for Ms. Daniels' rejection of the two jurors at issue. Since the trial court did not require the State to fully explain its use of the peremptory challenges, we remand the case in order to permit the prosecutor to do so and to allow the trial court to make findings under *Batson*. Should the trial court determine that the State did not fulfill its burden to provide racially-neutral reasons, a new trial is in order. Should the trial court determine that no *Batson* violation occurred, appellant's convictions, following the resentencing mandated in Division 1, will remain in effect. Either party may file a notice of appeal from the trial court's ruling made on remand. *Barton v. State*, 184 Ga. App. 258, 260 (361 SE2d 250) (1987).

3. Two months after his appeal was submitted for decision, appellant filed an additional enumeration of error in which he takes issue with the content of the trial court's charge on voluntary manslaughter. Rule 39 of the Rules of the Supreme Court of Georgia requires the enumerations of error to be filed as a separate part of appellant's brief within 20 days after the case is docketed in this court. The new enumeration of error is therefore untimely and will not be considered. *Trenor v. State*, 252 Ga. 264 (8) (313 SE2d 482) (1984).

*Case remanded with direction. Clarke, C. J., Fletcher, Sears-Collins and Hunstein, JJ., concur; Hunt, P. J., concurs in the judgment only.*

DECIDED JANUARY 15, 1993.

*L. Clark Landrum*, for appellant.
*David E. Perry, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy*

---

[3] We note a point made by the U. S. Supreme Court in *Georgia v. McCollum*, supra at 4579:

Counsel can ordinarily explain the reasons for peremptory challenges without revealing anything about trial strategy or any confidential client communications. In the rare case in which the explanation for challenges would entail confidential communications or reveal trial strategy, an *in camera* discussion can be arranged. [Cits.]

R. *Katz, Staff Attorney*, for appellee.