A93A0066. KELLY v. THE STATE.
(434 SE2d 743)

BEASLEY, Presiding Judge.

Barry Kelly was indicted on a charge of armed robbery, OCGA § 16-8-41 (a), in March 1991, and on separate charges of armed robbery and aggravated assault with intent to rob, OCGA § 16-5-21 (a) (1) in August 1991. The three charges were joined for trial over

Kelly's objection, and a jury convicted him on all. His motion for new trial was denied.

The first armed robbery took place on January 26, 1991. A man entered a Wendy's restaurant and directed the assistant manager to walk back to the office and open the safe. He was joined by a second man holding a gun at his side who assisted in taking the money from the safe. At trial, the assistant manager identified Kelly as the second man.

The second incident occurred two days later. Two men were loading computer equipment into a car in a garage when a gunman appeared and, after learning the men had no billfolds, demanded the car keys. When this request was refused, the robber struck the owner of the car. When a second man then approached the car the victims surrendered the keys, but before the two robbers drove away in the stolen car, the same victim was hit again from behind. Three days after this robbery, the owner of the car identified Kelly from a photographic lineup.

Approximately two weeks later, Kelly was apprehended when a policeman responding to a call to assist a motorist found him attempting to change the tire of a car. Kelly claimed to have borrowed the car, but when the officer checked on both Kelly and the tag, he learned there was a felony warrant outstanding for Kelly for the armed robbery in which the car was taken on January 28.

1. Kelly, who is black, contends the trial court erred in denying his challenge, based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to the State's use of its peremptory strikes. *Batson* directs a three-step process for evaluating a claim of racial discrimination in the State's use of peremptory jury strikes: (1) the defendant must make a prima facie showing that the prosecution has exercised its peremptory challenges on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

(a) The trial court found that Kelly had failed to make a prima facie showing of discrimination under *Batson*. Out of an abundance of caution, however, he continued with the second and third steps of the evaluation. Twenty-five blacks were included in the fifty-four person venire, or forty-six percent. Four jurors were struck for cause, of whom one was black, leaving the percentage of blacks in the fifty-person venire at forty-eight percent. The jury impaneled, including the two alternates, included five blacks, or thirty-six percent. The prosecution exercised nine peremptory challenges, all against blacks. This was sufficient to create a prima facie inference of racial discrimination, *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987), and thus

the trial court's determination that no prima facie showing had been made was erroneous. Id.

"However, '(o)nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. ([Cit.])'" *Lewis v. State*, 262 Ga. 679, 680 (424 SE2d 626) (1993).

(b) We turn, then, to the reasons given by the prosecutor for striking the nine jurors in question, to determine whether he made sufficient showing that the challenges did not involve discriminatory purpose. "The prosecutor's explanations must be strong enough to *overcome* the prima facie case." *Ford v. State*, 262 Ga. 558, 559 (2) (423 SE2d 245) (1992).

At the *Batson* hearing, the defense did not respond to three of the reasons given by the prosecutor, and on appeal the reasons given for striking those three jurors are not challenged. The reasons given for these strikes were not "suspect." Compare *Ford*, supra at 559-560 (3). Rather, they demonstrate "the kind of concrete, tangible, race-neutral and neutrally-applied reasons that can overcome the strong prima facie case established . . . in this case." Id.

Four other prospective jurors were struck for various "reasonable suspicions" articulated by the prosecutor regarding their impartiality. Two of them specifically expressed doubt that they could be impartial. Another's father had been convicted of a crime and had been imprisoned. See *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993). One, a 19-year-old male, expressed his belief that law enforcement officials had not done what they could have done to investigate an armed robbery in which he had been the victim, and the prosecutor believed that attitude made him an unsuitable juror. "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excuse for cause might well justify the exercise of a peremptory strike." *Hall v. State*, 261 Ga. 778, 780 (2) (a) (415 SE2d 158) (1991).

The prosecutor explained that he struck a nurse who had retired from his job in a hospital observation ward on disability because of doubts regarding his health, stamina, and ability to sit through a lengthy trial and observe the witnesses.

The prosecutor's remaining strike was of a prospective juror who indicated he had worked at his present job for only four months. Prior to that he worked in catering for Eastern Airlines for about seven years. His wife was in art school. The explanation was that he was struck because of the prosecutor's concern that he was not "a stable member of this community." Defense counsel's response at the *Batson* hearing that other prospective jurors had similar work histo-

ries yet had not been stricken is not borne out by the record, which reveals only one such prospective juror who became a member of the petit jury. That member's race is not shown. The record does not reflect the race of the jurors accepted by the State, but only that of the jurors specifically challenged by appellant. Some of the jurors described in the dissent may be black and were accepted by the State.

Standing alone, the prosecutor's explanation has the appearance of one of those "reflect[ing] certain stereotypical attitudes as to particular groups," *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992), and therefore suspect, as urged by Kelly. See *Thomas v. State*, 208 Ga. App. 367 (430 SE2d 768) (1993), (Beasley, P. J., dissenting). However, it "must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and, as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case. A court charged with the duty of determining whether the prosecutor has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered justifications are questionable." *Gamble*, supra at 327 (5). Although the prima facie case was strong, this was the only one of the prosecutor's nine explanations that appears suspect under *Batson*. In general, the prosecutor's explanations were clear, specific, related to the case to be tried, and race-neutral. *Gamble*, supra at 327 (5); see *Davis*, supra. Compare *Williams v. State*, 262 Ga. 732, 733-734 (1) (426 SE2d 348) (1993).

The trial judge personally observed the voir dire and was able to note the demeanor of both the prospective jurors and the prosecutor, an opportunity denied to this court. In ruling on the *Batson* claim and concluding that the State had exercised its peremptory challenges in a neutral manner, the trial court noted this careful observation of the jury selection. His finding is entitled to " 'great deference,' " *Gamble*, supra, and given the circumstances present, it is affirmed because it is not clearly erroneous. Id.

2. Kelly contends the trial court erred in granting the State's motion to join the two indictments, over objection. "A denial of severance is reviewed under an abuse of discretion standard." *Davis*, supra at 6 (3). Georgia has adopted the ABA Standards on Joinder of Offenses, *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975), which provide in pertinent part that offenses may be tried together when they constitute part of a single scheme or plan. Id. at 463; see *Davis*, supra.

The offenses joined are logically connected and show a single scheme: the Fulton County Wendy's robbery was followed two days

later by the armed robbery of a car. On the same day the car was taken, it was used in two Wendy's robberies in DeKalb County, in which the robbers used a modus operandi identical to that used in the Fulton County Wendy's robbery. Prior to this trial, Kelly had pled guilty to the DeKalb offenses. The trial court did not abuse its discretion by allowing joinder of the offenses for trial. *Davis*, supra.

3. Kelly enumerates as error the trial court's striking of the entire testimony of his half-brother, Ricky Dennis.

Despite having pled guilty to the DeKalb County Wendy's robberies, Kelly's sole defense at trial was misidentification. Dennis, a defense witness, testified on direct examination that during January and February 1991, he participated in twenty or more armed robberies and had pled guilty to six in DeKalb County, for which he was currently incarcerated. He testified that, although Kelly was at the two DeKalb County Wendy's robberies to which he pled guilty, those pleas had been *Alford* pleas,[1] and Kelly was only minimally involved. He testified that Kelly had been out of town until January 28, and that he had received a call from Kelly asking if he could pick him up because he had hitchhiked home from South Carolina, where he had been visiting a girl friend, and had no ride from where he had been dropped off in south Atlanta.

Dennis testified that he picked Kelly up and proceeded straight to a DeKalb County Wendy's and robbed it. His testimony was that he thought Kelly would stay in the car, and that Kelly had not known the restaurant was to be robbed, but had come in during the robbery. Dennis also admitted the two Fulton County robberies with which Kelly was charged, and denied that Kelly had been with him.

Immediately after Dennis admitted these crimes, for which he had not been indicted, the prosecutor requested a bench conference, which was granted. After the trial court excused the jury, he explained to Dennis that the testimony could incriminate him and informed him of his *Miranda* rights. Dennis then requested to speak with an attorney, and the judge adjourned the trial for the day so that Dennis could do so.

The following morning, after having spoken with the public defender who represented him on the DeKalb County charges to which he had pled guilty, Dennis invoked his Fifth Amendment right to refuse to testify further, on the advice of counsel. The State moved to

---

[1] In *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), the Supreme Court held that a defendant's plea of guilty coupled with his claim of innocence was not necessarily a demonstration that the plea was not free and voluntary; and that no constitutional error exists in accepting such a plea when the defendant intelligently concludes it is in his best interest and the judge has inquired into the factual basis for the plea and has sought to resolve the conflict between the waiver of trial and the claim of innocence.

strike all of Dennis' direct testimony on the ground that they planned to introduce the DeKalb County robberies as similar transactions in the planned Fulton County prosecution of Dennis, and would be denied the right to cross-examine him regarding his statements about his role in the DeKalb County robberies (to which the State believed he had also entered an *Alford* plea). After hearing argument from counsel, the trial court granted the State's motion and instructed the jury to disregard all of Dennis' testimony, which was proper.

"[W]hen a witness declines to answer on cross examination certain pertinent questions relevant to a matter testified about by the witness on direct examination, all of the witness' testimony on the *same subject matter* should be stricken." *Smith v. State*, 225 Ga. 328, 331 (168 SE2d 587) (1969).

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Johnson and Smith, JJ., concur. Pope, C. J., and Andrews, J., concur specially. Cooper and Blackburn, JJ., dissent.*

Pope, Chief Judge, concurring specially.

I agree that the explanation offered by the prosecutor for the peremptory strike of the nurse who had retired because of disability was not suspect even though the juror stated there was nothing about his condition that would make it uncomfortable for him to sit through the trial. Despite the juror's statement, since his condition made it impossible for him to work, I do not believe the prosecutor's concerns about his stamina to sit on the jury were pretextual.

As to the juror who was struck because of an unstable work history, I do not believe the record shows purposeful discrimination. The dissenting opinion notes that several jurors who were not struck by the State were housewives or mothers who were not employed outside the home. In my opinion, it is not valid to compare a juror who is employed as a homemaker to one who is underemployed or who was previously employed but now unemployed. As further noted in the dissenting opinion, in addition to the juror who was struck for an unstable work history, four other jurors were not struck even though they responded that they were employed only part-time or had previously been employed but were currently unemployed. While these work histories might be comparable to that of the juror who was struck, the record does not show the race of these other jurors. Thus, the record is insufficient to support defendant's argument that the prosecutor failed to offer a race-neutral reason for striking the juror in question. Accordingly, defendant has failed to carry his burden to prove the trial court erred. See *Jefferson v. State*, 206 Ga. App. 544 (6) (425 SE2d 915) (1992); *Love v. State*, 205 Ga. App. 27 (1) (421 SE2d 125) (1992).

I am authorized to state that Judge Andrews joins in this special

concurrence.

COOPER, Judge, dissenting.

The prosecutor used nine of the ten peremptory strikes he exercised to exclude blacks from the jury. During the *Batson* hearing, the prosecutor articulated the reasons for his exercise of each of the strikes, and the trial judge concluded that the State had exercised all of its nine peremptory strikes in a race-neutral manner. I dissent because I believe that the trial court's conclusion is in error.

The prosecutor's reason for striking one prospective juror was that the prospective juror had worked at his present job for only a few months thus indicating an unstable work history. The majority contends that there was only one prospective juror with a similar work history who was selected for the jury. My review of the record reflects that there were several prospective jurors with similar work histories who were found acceptable to the State. In addition to the prospective juror acknowledged by the majority to have a similar work history, another prospective juror explained that she was a nurse but not presently employed. One prospective juror admitted that he was not presently working and that he had previously worked for only a year with the City of College Park, and another explained that she was not working but was recently divorced and starting a new life for herself. One juror stated that she worked only two days a week at a retail establishment and played tennis the remaining days. Several other prospective jurors were housewives or mothers not employed outside the home. Thus, I find that the prosecutor's explanation of "unstable work history" applied equally to more than one of the prospective jurors. The majority concedes that this explanation was "suspect," but concludes that this was the only one of the prosecutor's nine explanations that appears suspect. I do not agree that it was the only suspect explanation and would further point out that the rule of *Batson* is violated if the State exercised *any* of its peremptory strikes for racially discriminatory reasons. *Powell v. State*, 182 Ga. App. 123 (2) (355 SE2d 72) (1987).

The prosecutor contended that he struck one of the prospective jurors because the juror had taken disability leave, and the prosecutor was concerned that the juror would be unable to sit through the trial. However, the record reflects that the prospective juror unequivocally stated that his disability, an enlarged heart, would not affect his ability to sit on the jury. The prosecutor did not question this prospective juror any further, and the record is devoid of any evidence which would support the prosecutor's stated concern that the juror might have problems sitting through the trial. In light of the strong prima facie case established by the prosecutor's exercise of nine peremptory strikes to excuse blacks, the prosecutor's explanations were required

to be "concrete, tangible, race-neutral and neutrally-applied." *Ford v. State*, 262 Ga. 558, 560 (423 SE2d 245) (1992). I cannot conclude as readily as the majority that "[i]n general, the prosecutor's explanations were clear, specific, related to the case to be tried and race-neutral." Consequently, I must respectfully dissent.

Because I would reverse the trial court's ruling on the *Batson* issue and grant appellant a new trial, I find it unnecessary to address appellant's remaining enumerations of error.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED JULY 14, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — ■

*Jeanne M. Canavan*, for appellant.

*Lewis R. Slaton*, District Attorney, *Charles W. Smegal, Vivian D. Hoard*, Assistant District Attorneys, for appellee.