## A93A1152. CHUNN v. THE STATE.
### (435 SE2d 728)

JOHNSON, Judge.

Homer Chunn appeals from his conviction of possessing cocaine with intent to distribute.

1. Chunn complains that the trial court erred in allowing a police officer to give hearsay testimony which placed his character in issue. The officer, in response to cross-examination by Chunn's attorney about the circumstances surrounding Chunn's arrest, testified that Chunn offered to provide the police with information about other drug dealers in exchange for lenient treatment on the current offense. The officer stated that Chunn was arrested and charged with the instant offense only after he failed to provide any of the promised information. When Chunn's attorney asked whether Chunn was unable to provide the information, the officer replied, "I don't believe he was unable. I just think he was unwilling." The trial court allowed the officer to explain that the reason he believes Chunn was unwilling, rather than unable, to provide the information is that several people have told him that Chunn continued selling drugs even after the current offense. Chunn objects to the court's ruling allowing this explanation.

"Under OCGA § 24-3-2, conversations had in the course of a legal investigation may be admitted as original evidence to explain the conduct of a law enforcement official provided the conduct involves a matter relevant to the issue on trial. [Cit.]" *Matthews v. State*, 194 Ga. App. 386, 387 (2) (a) (390 SE2d 873) (1990). Only in rare instances does an investigating officer need to explain his conduct. *Glass v. State*, 171 Ga. App. 156, 157 (319 SE2d 60) (1984). Chunn's own cross-examination of the officer in the present case made this one of those rare instances; his questioning of the officer made the circumstances surrounding his arrest relevant and in need of explanation. The officer's testimony explaining the circumstances leading to Chunn's arrest was authorized as original evidence. *Aaron v. State*, 203 Ga. App. 658, 659 (1) (418 SE2d 66) (1992); *Frazier v. State*, 195 Ga. App. 599, 600 (4) (394 SE2d 396) (1990).

Chunn's further argument that the officer's testimony impermissibly placed his character in issue was not properly reserved for appellate review as no such objection was made at trial. The record shows that Chunn's only objections at trial were that the testimony was hearsay, irrelevant and prejudicial. "No 'character' objection was made." *Felker v. State*, 252 Ga. 351, 364 (1) (e) (314 SE2d 621) (1984). This court cannot consider issues and grounds for objection which were not raised in the trial court. *Lewis v. State*, 205 Ga. App. 29, 30 (1) (421 SE2d 339) (1992). Even if such an objection were properly before us, it is without merit as the officer's testimony was not

inadmissible simply because it may have incidentally placed Chunn's character in issue. *Frazier v. State*, 257 Ga. 690, 698 (16) (362 SE2d 351) (1987); *Dawson v. State*, 205 Ga. App. 394, 396 (2) (422 SE2d 280) (1992). Moreover, in light of the officer's testimony that he clearly observed Chunn make three separate drug sales, it is more than highly probable that admission of the challenged evidence did not contribute to the verdict. *Dawson v. State*, supra at 395 (2).

2. Chunn, who is black, asserts that the trial court erred in denying his challenge to the State's use of peremptory strikes to remove four black males from the jury pool.[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The preliminary issue of whether Chunn established a prima facie case of discrimination is moot because the prosecutor offered purportedly race-neutral explanations for the peremptory challenges and the trial court ruled on the ultimate question of intentional discrimination. *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993). We therefore need only address the sufficiency of the prosecutor's explanations for the exercise of the four peremptory strikes of black males. "The prosecutor's explanations must be strong enough to *overcome* the prima facie case." (Emphasis in original. Citation and punctuation omitted.) *Kelly v. State*, 209 Ga. App. 789 (1) (b) (434 SE2d 743) (1993.)

"[T]he exercise of a peremptory challenge may not be based on either the race of the juror or racial stereotypes held by the party. [Cit.]" *Congdon v. State*, 262 Ga. 683, 685 (424 SE2d 630) (1993). "In order for the State to carry its *Batson* burden, the prosecutor [must] explain his striking of the jurors at issue by articulating a racially-neutral reason related to the particular case. [Cit.]" *Lewis v. State*, 262 Ga. at 680 (2). Here, the prosecutor explained that one of the black males was struck because his son had been charged with a crime. The prosecutor's concern that such a juror might be biased against the State in the instant case is legitimate and his explanation as to the exercise of this peremptory challenge is racially neutral. " 'A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike.' " *Davis v. State*, 263 Ga. 5, 8 (10) (426 SE2d 844) (1993); see also *Batton v. State*, 260 Ga. 127, 129 (2) (391 SE2d 914) (1990).

The prosecutor's explanations for striking the other three black males, however, are insufficient. The prosecutor told the trial court that it struck Demetrick McWhorter, Harold Moton and Darryl Sinkfield simply because they are students. The prosecutor also noted

---

[1] The State also used four peremptory challenges to strike three white males and one white female.

that Sinkfield had been a Marine. Although these explanations appear to be nonracial, they are nonetheless inadequate because the prosecutor made no attempt to explain how being a student or a former Marine is related to this particular case. The explanation of the use of a peremptory challenge must be related to the case to be tried. *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987). "Standing alone, the prosecutor's explanation[s] [have] the appearance of . . . those reflect(ing) certain stereotypical attitudes as to particular groups." (Citation and punctuation omitted.) *Kelly v. State*, supra at 792. "Any such explanations should be given additional scrutiny by the trial court before they are found acceptable." *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992). It appears from the transcript that the trial court failed to give any additional scrutiny to the State's inadequate explanations before finding them acceptable.

While the trial court's findings are entitled to great deference, "rubber stamp approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson's* commitment to ensure that no citizen is disqualified from jury service because of his race." (Citations and punctuation omitted.) *Gamble*, supra at 327 (5). Since the trial court did not require the State to fully explain its use of the peremptory challenges as to McWhorter, Moton and Sinkfield, we remand the case in order to permit the prosecutor to do so and to allow the trial court to make findings under *Batson*. Should the trial court determine that the State has not fulfilled its burden to provide racially neutral reasons related to this particular case, a new trial is in order. Should the trial court determine that no *Batson* violation occurred, Chunn's conviction will remain in effect. Either party may file a notice of appeal from the trial court's ruling made on remand. *Lewis v. State*, 262 Ga. at 681 (2).

*Case remanded with direction. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 9, 1993.

*Shandor S. Badaruddin*, for appellant.
*Lewis R. Slaton, District Attorney, Rebecca A. Keel, William F. Riley, Jr., Assistant District Attorneys*, for appellee.