## A94A2796. McKIBBONS v. THE STATE.
(455 SE2d 293)

McMURRAY, Presiding Judge.

Defendant Charles McKibbons, a/k/a Charles McKibbens, was charged via indictment with a single violation of the Georgia Controlled Substances Act, in that he "did unlawfully possess . . . Cocaine, . . . with intent to distribute. . . ." The evidence adduced at his jury trial showed that police obtained a no-knock search warrant for "117 Pine [Street,] # 9," in Atlanta, Georgia. Before executing this search warrant, police observed the premises and discovered that a person leaving this apartment had crack cocaine in his possession. By use of a decoy, defendant was lured out of the apartment whereupon the search warrant was executed. Defendant was detained during the premises search. A search of his person revealed a "plastic pill bottle containing [114] hits of crack cocaine . . ." hidden in defendant's groin.

The jury found him guilty as charged. After the denial of his motion for new trial, defendant appealed directly to the Supreme Court of Georgia, which transferred this appeal to the Court of Appeals of Georgia. *Held*:

1. In his first enumeration, defendant contends the trial court erred in sustaining the State's challenge to defense counsel's use of peremptory challenges, arguing that he was denied his right to a "fair and impartial jury. . . ."

The transcript indicates that the qualified venire was composed of 21 white potential jurors and 14 black potential jurors, a ratio of 60 percent to 40 percent whereas the petit jury as originally selected contained four white jurors and eight black jurors, a ratio of 33⅓ percent to 66⅔ percent. Defendant, who is black, "exercised all [twelve] of his peremptory strikes, . . . ten of which were against white [potential] jurors. . . ." The trial court heard defense counsel's reasons for striking these ten white potential jurors and ultimately ordered that five of them be seated as jurors after determining the proffered reasons were not "sufficient[ly] racially neutral. . . ." The seating of these five white venire resulted in a petit jury of "seven white jurors, [and]

five black jurors, which [the trial court] deemed to be sufficiently close to the sixty-forty percent of the entire venire, with one black alternate juror." Defendant then moved for a mistrial, questioning whether "jurors who know they have been struck by the defense [can] be placed on a jury and [be] fair and impartial. . . ."

" '(T)he Constitution (of the United States) prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges.' . . . [B]oth the [S]tate and defendants in criminal actions are constrained to exercise their peremptory challenges in a racially neutral fashion." *State v. Mayweather*, 262 Ga. 727 (425 SE2d 659). "[C]riminal defendants have no . . . license to violate the equal protection rights of prospective jurors. . . . [Cits.]" *Georgia v. McCollum*, 505 U. S. ___ (3) (A), fn. 6 (112 SC 2348, 120 LE2d 33). "The remedy against defense discrimination [is] a *Batson* challenge by the [S]tate against the defendant. . . ." *Davis v. State*, 263 Ga. 5, 7 (10), fn. 3 (426 SE2d 844).

An explanation for the use of a peremptory strike, "even if it is based upon mistake or ignorance, may be sufficient to rebut a prima facie *Batson* showing, so long as it is not whimsical or fanciful but is neutral, related to the case to be tried, and a clear and reasonably specific explanation of the legitimate reasons for exercising the challenges." (Citations and punctuation omitted.) *Smith v. State*, 264 Ga. 449, 453 (4) (448 SE2d 179). " 'In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [challenger's] state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." (Cits.)' " *Smith v. State*, 264 Ga. 449, 454 (4), supra.

In the case sub judice, the trial court was authorized to disbelieve the facially race-neutral reasons for striking certain jurors, or to conclude that the stated grounds were not neutrally applied. For example, the explanation for striking a Waffle House employee on the ground that "Waffle House was a Republican stronghold" is whimsical or fanciful, as is the notion that real estate agents "[go] along with the majority." Another peremptory challenge was employed because the potential juror "avoided eye contact. . . ." However, the trial court was authorized to conclude that this explanation "reflect[s] certain [impermissible] stereotypical attitudes as to particular groups." *Tharpe v. State*, 262 Ga. 110, 111 (6), 112 (416 SE2d 78). Although defense counsel indicated that it was his "custom to strike jurors who have had jury experience . . . ," the record would support the determination that this ground was not neutrally applied in that a minister

"had jury service and was not struck." We are mindful that "it *cannot be presumed* that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated." (Emphasis supplied.) *Lingo v. State*, 263 Ga. 664, 665 (1), 668 (1) (c) (437 SE2d 463). Nevertheless, considering the prima facie case, the fact that the trial court accepted defendant's reasons for striking five of the ten venire, combined with the lack of merit in the reasons proffered for the others, we find no clear error in the trial court's determination to seat as jurors the five venire defendant attempted to exclude through discriminatory use of peremptory challenges. The "prohibition of the discriminatory exercise of peremptory challenges does not violate a defendant's Sixth Amendment right to a trial by an impartial jury. The goal of the Sixth Amendment is 'jury impartiality with respect to both contestants.' [Cits.]" *Georgia v. McCollum*, 505 U. S. ____ (3) (D), supra. This enumeration is without merit.

2. Next, defendant enumerates the denial of his motion to suppress, arguing that he was arrested without probable cause and that any consent to search his person was coerced. It appears that this issue was raised only by an oral motion after voir dire and memorialized by the subsequent filing of a written motion. In colloquy, the trial court reasoned that the police had reasonable grounds to stop defendant based upon their observations, that he consented to a search of his person, and the discovery of the pill bottle with 114 hits of cocaine established probable cause for a warrantless arrest. The record contains no request for a hearing on the written motion. The trial court did not err in denying defendant's motion to suppress because it was untimely filed. *Baseler v. State*, 213 Ga. App. 822 (1) (446 SE2d 250).

3. In his third enumeration, defendant contends his "right to cross examination was constitutionally impaired such as to deprive him of his right to a fair trial. . . ." He first argues that he was not afforded confrontation "due to the [S]tate's failure to call the other arresting officer, and the two eye witnesses to the incidents leading to arrest." Secondly, he complains that "[t]estimony by [Officer Stanley Green] . . . regarding the statements of the two other parties to the transactions leading to [defendant's] arrest constituted impermissible hearsay in violation of [his] right of cross examination."

These two grounds "of error fail to specify any error alleged to have been committed by the trial court. See OCGA § 5-6-51 (4)." *Robinson v. State*, 210 Ga. App. 278, 279 (2) (435 SE2d 718). Moreover, " '[t]here is no requirement that the State call more witnesses than it needs to present its case.' " *Fitzgerald v. State*, 193 Ga. App. 76 (3) (386 SE2d 914). "The constitutional right [of the accused] is the right to be confronted with the *witnesses* testifying against him. [Cits.]" (Emphasis in original.) *Heard v. State*, 126 Ga. App. 62, 65

(3), 66 (189 SE2d 895). In the case sub judice, the fact that the State did not call the decoy who lured defendant out of the apartment was not an impermissible limitation of the right of the accused to confront the witnesses against him, since the direct testimony of the arresting officer established all of the elements of the offense of possessing cocaine with the intent to distribute, as alleged in the indictment. *Brown v. State*, 147 Ga. App. 638 (1), 639·(249 SE2d 689).

As to defendant's contention that the arresting officer was impermissibly permitted to offer hearsay testimony, the citation to the record offered in support of this enumeration demonstrates that the statement objected to on appeal came in reply to questions posed by defense counsel during cross-examination. The officer witness was explaining why he could *not* relate out-of-court statements made by persons who were present at defendant's arrest but not present at trial. "Thus, error, if any, was self-induced and provides no basis for reversal. *Bess v. State*, 187 Ga. App. 185, 189 (5) (369 SE2d 784) (1988)." *Fitzgerald v. State*, 193 Ga. App. 76, 77 (7), 78, supra.

4. Defendant's fourth enumeration contends the "prosecutor made improper and prejudicial comments in closing argument . . ." which deprived him of due process. However, defendant interposed a timely objection in only two of the many instances of allegedly improper argument cited in support of this enumeration, such that all other instances have been waived because they were not properly preserved for appellate review. *Moore v. State*, 222 Ga. 748, 749 (6) (152 SE2d 570).

The first objection raised by defendant to closing argument by the State's attorney asserted "there is no evidence of a hallway conversation." This assertion was contradicted by the State's attorney. The trial court observed that the "jury will remember the evidence," and the State's attorney continued with closing argument. Defendant raised no additional objection and invoked no additional ruling. " 'Acquiescence completely deprives [defendant] of the right to complain further.' *Thompson v. State*, 186 Ga. App. 471, 472 (367 SE2d 320) (1988) (quoting *Upshaw v. Cooper*, 127 Ga. App. 690, 692 (194 SE2d 618) (1972))." *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188). This ground of the enumeration is without merit.

As to the second objection to allegedly improper closing argument, the record shows the following transpired: "[STATE'S ATTORNEY:] . . . We know that drugs are ravaging our community. We know that many people are being failed by the system. That was brought out on voir dire questioning of some of the prospective jurors on this panel. I would submit . . . that you would do a disservice and would victimize the people of Techwood Homes. . . . [DEFENSE COUNSEL:] Your Honor, I am going to object to that line of argument, claiming the passion of the jury. It's not in evidence. [THE

COURT:] Overruled. Go ahead." Defendant did not thereafter move for a mistrial, a rebuke, or for curative instructions.

We find no error in overruling defendant's objection in this instance. "A statement by the prosecutor that drugs are 'killing our society' and pointing out that [defendant] committed a serious offense was merely pointing out to the jury its interest in law enforcement. This statement did not in any way prejudice [defendant's] right to a fair trial." *Hester v. State*, 187 Ga. App. 46, 48 (4) (369 SE2d 278). "It is not improper for a prosecutor to appeal to the jury to convict for the safety of the community, *Whitaker v. State*, 246 Ga. 163, 167 (11) (269 SE2d 436) (1980), or to argue as a part of the jury's duty that it should convict so as to stem a drug problem in the community, *Callahan v. State*, 179 Ga. App. 556, 564 (5) (347 SE2d 269) (1986), or to convict so as to send a message to others that criminal activities will not go unpunished. *Nebbitt v. State*, 187 Ga. App. 265, 268 (4) (370 SE2d 1) (1988)." *Philmore v. State*, 263 Ga. 67, 68 (3), 69 (428 SE2d 329). Compare *Fair v. State*, 168 Ga. 409, 412 (1) (148 SE 144), where the Supreme Court of Georgia reversed a capital murder conviction because of improper argument by the prosecution, holding that references to a statistic that 561 murders were committed in Georgia in 1922 "were [not] matters of such common knowledge that the court would take judicial cognizance of their existence without proof."

Finally, repeated references by the State's attorney in closing argument to that intimate portion of defendant's anatomy wherein he had concealed 114 doses of crack cocaine were not improper argument, calculated to inflame the passions and prejudices of the jury by the impermissible introduction of facts not in evidence. Compare *Bell v. State*, 263 Ga. 776 (439 SE2d 480). This enumeration is without merit.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 2, 1995 —
RECONSIDERATION DENIED FEBRUARY 23, 1995 —

*Cathy M. Alterman*, for appellant.
*Lewis R. Slaton*, District Attorney, *Anita T. Wallace*, *Kirby Clements, Jr.*, *Vivian D. Hoard*, Assistant District Attorneys, for appellee.