A95A1702. PARKER v. THE STATE.
(464 SE2d 910)

RUFFIN, Judge.

Seaton Parker appeals his convictions of armed robbery, aggravated assault (two counts), criminal attempt to commit armed robbery, possession of a firearm during the commission of a crime, carrying a concealed weapon, and possession of tools for the commission of a crime. The charges stemmed from an August 21, 1993 armed robbery and a September 3, 1993 robbery attempt of two Wendy's restaurants in DeKalb County. Because the trial court erred in finding that the State exercised its peremptory strikes in a racially-neutral manner, we reverse and remand for a new trial.

1. Parker, an African-American, enumerates as error the trial court's determination that the State overcame his challenges to the

State's exercise of its peremptory strikes based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The State used four of its six peremptory strikes against African-American prospective jurors.

"The preliminary issue of whether [Parker] established a prima facie case of discrimination [under *Batson*] is moot because the prosecutor offered purportedly race-neutral explanations for the peremptory challenges and the trial court ruled on the ultimate question of intentional discrimination. [Cit.] We therefore need only address the sufficiency of the prosecutor's explanations for the exercise of the four peremptory strikes of black [prospective jurors]. 'The prosecutor's explanations must be strong enough to *overcome* the prima facie case.' [Cit.]" *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993).

" '(T)he exercise of a peremptory challenge may not be based on either the race of the juror or racial stereotypes held by the party. (Cit.)' [Cit.] 'In order for the State to carry its *Batson* burden, the prosecutor (must) explain his striking of the jurors at issue by articulating a racially-neutral reason *related to the particular[s of the] case.* (Cit.)' [Cit.]" (Emphasis supplied.) Id. In this case, the prosecutor explained that juror Hollis, a criminal justice major at West Georgia College, was struck because he always hesitated to put anyone with education in the law or criminal justice on a jury. He stated his belief that one with her background would take a microscopic view of the evidence, have an extremely narrow perspective of reasonable doubt, and therefore not be a good State's juror. The trial court found this explanation to be racially neutral and sustained the State's peremptory strike. Its ruling is entitled to great deference. *Kelly v. State*, 209 Ga. App. 789 (1b) (434 SE2d 743) (1993). "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike." (Citations and punctuation omitted.) *Chunn*, supra. The prosecutor's explanation, based on a reasonable suspicion, was racially neutral and related to the particulars of this case. Thus, the trial court's ruling was not clearly erroneous. See *Kelly*, supra at 210.

On the other hand, the prosecutor's explanations for striking the other three African-American prospective jurors are suspect.

The prosecutor explained that he struck juror Strong because she did not appear to be paying attention. He stated that during jury selection, every time he looked at Strong, her arms were crossed, her eyes were closed, and she appeared to be sleeping. He also stated that he struck Strong because she said she had been a babysitter for the nieces and nephews of another prosecutor in his office.

The State offered conflicting explanations for striking juror Johnson. The prosecutor stated that she "clearly did not want to be here

to participate in the process. She appeared not to be paying attention, when we were talking with her." The prosecutor explained that Johnson's "inability to focus" was demonstrated by the fact that she was a 24-year-old, unemployed, part-time student. He also stated that the juror "seemed somewhat inwardly . . . hostile towards questions by both me and I thought [defense counsel]" and "hostile toward the system. . . ."

The prosecutor explained that he struck Juror Shepherd because her arms were crossed throughout the proceedings and she had a "very dour frown on her face." She appeared to "glare off into the distance" and refused to look at him during questioning. Based on these observations, the prosecutor concluded that Shepherd was annoyed that she had to be in court and that she would not pay attention to the evidence.

The prosecutor admitted that he based his explanations almost entirely on the jurors' demeanor and not on any specific responses to questions. Although he is entitled to draw reasonable inferences, we are troubled by such complete reliance on bare hunches drawn from the jurors' demeanor and the apparent absence of any inquiry into whether these jurors actually held any biases. There is absolutely no evidence that the jurors formed or expressed any opinion as to Parker's guilt or innocence; that they held any pro-prosecution or pro-defense leanings; or that they could not sit and serve as fair and impartial jurors and return a verdict based solely on the evidence introduced at trial. Indeed, without such evidence, the prosecutor's explanations reflected unacceptable stereotypical attitudes as to particular groups which cannot serve as a basis for exercising peremptory strikes. See *Tharpe v. State*, 262 Ga. 110 (6) (416 SE2d 78) (1992); *McKibbons v. State*, 216 Ga. App. 389 (1) (455 SE2d 293) (1995). Furthermore, we fail to see how the explanations given are related to this case.

In the case of Strong, there was no inquiry as to whether or why she was sleeping and whether the inattentiveness the prosecutor perceived was related to this particular case such that she could not be a fair and impartial juror. Furthermore, if the prosecutor observed this juror sleeping, he had a duty to bring it to the court's attention. See *Williams v. State*, 190 Ga. App. 361 (2) (378 SE2d 886) (1989). There is also no evidence of how Strong's rather attenuated relationship with another prosecutor, not involved in this case, would have affected her service on the jury.

The prosecutor inferred from Johnson's body language that she was both inattentive and hostile. We question how a person could give the appearance that she is not paying attention and hostile at the same time. In any event, the prosecutor failed to tie either of those attitudes to this case. Furthermore, there is no apparent connection

between her status as a 24-year-old unemployed, part-time student and the prosecutor's perception that she necessarily had an "inability to focus" on, we presume, the evidence in the case.

With respect to Shepherd, there is likewise no apparent connection between the prosecutor's conjecture as to her fitness to serve on the jury, derived solely from his perceptions of her body language, and any aspect of this case. Moreover, our courts have specifically recognized that explanations involving certain aspects of eye contact can reflect impermissible stereotypical attitudes. See *Tharpe*, supra; *McKibbons*, supra.

Although the trial court's findings are entitled to great deference, we cannot condone the exclusion of the three prospective African-American jurors based almost entirely on their demeanor. The prosecution's reasons for striking these African-American prospective jurors were not the kind of concrete, tangible, race-neutral, case-related and neutrally applied reasons sufficient to overcome Parker's prima facie case. Therefore, the trial court's determination that the State did not use its peremptory strikes in a racially discriminatory manner was clearly erroneous and should be reversed. In accordance with *Williams v. State*, 262 Ga. 732 (1) (426 SE2d 348) (1993), the case is remanded for a new trial. See also *Rector v. State*, 213 Ga. App. 450 (1) (444 SE2d 862) (1994).

2. We have considered Parker's remaining enumerations of error and find that they either lack merit or are unlikely to recur at trial.

*Judgment reversed and remanded. Beasley, C. J., concurs. Pope, P. J., concurs specially.*

Pope, Presiding Judge, concurring specially.

I agree that the State failed to articulate adequate, racially-neutral reasons related to the specifics of this case for three potential jurors, and that retrial is therefore warranted under *Batson* and Georgia cases applying *Batson*.

I write separately to point out that since the recent United States Supreme Court decision in *Purkett v. Elem*, ____ U. S. ____ (115 SC 1769, 131 LE2d 834) (1995), the law regarding *Batson* challenges is in a state of flux. In *Purkett*, a per curiam decision issued on a petition for certiorari without benefit of briefing or oral argument, the United States Supreme Court implicitly overruled *Batson* in part, concluding that despite explicit language in *Batson* to the contrary, the equal protection clause of the Federal Constitution does not require the State's racially-neutral reason to be related to the case (or even sensible); as long as the trial court believes the State's denial of purposeful discrimination, *any* reason (other than "because he is African Ameri-

can") is legally sufficient.[1]

Thus, this case would have to be affirmed if we considered only the equal protection clause of the Federal Constitution. Our consideration is not so limited, however, as the Georgia Constitution also has an equal protection clause. The Georgia Supreme Court has consistently required the State's racially-neutral reason to be related to the case. See, e.g., *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993); *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993); *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987) (" ' "(r)ubber stamp" approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson*'s commitment to "ensure that no citizen is disqualified from jury service because of his race" ' "). I therefore think the proper course is to continue to follow this line of cases and require the racially-neutral reason to be related to the case unless and until the Georgia Supreme Court determines that case relatedness is not required under the equal protection clause of the Georgia Constitution.

In Justice Marshall's separate concurrence in *Batson*, he accurately predicted the difficulties courts would face in trying to eliminate racially discriminatory peremptory strikes. See 476 U. S. at 102-108. This prediction was based not just on an assumption that some prosecutors would lie about their reasons, but also on a realization that our racial and ethnic stereotypes may be so deep rooted that prosecutors may not even realize they are relying on them. Id. at 106. As a result, Justice Marshall suggested that we should simply eliminate peremptory strikes as the only way to eliminate discriminatory strikes. Id. at 107-108. And after years of reviewing these cases, I am beginning to see the wisdom of such a course.

DECIDED DECEMBER 5, 1995.

*Alden W. Snead*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Desiree S. Peagler, Assistant District Attorneys*, for appellee.

---

[1] The prosecutor in *Purkett* had explained his strike by saying that the struck juror "seemed suspicious" because he had long, unkempt hair, a mustache and a beard. The Eighth Circuit Court of Appeals rejected this explanation, holding that the racially-neutral reason for a strike must bear some relationship to the person's ability to serve as a juror in that case, and where the reason was facially irrelevant, the prosecutor at least had to articulate some plausible reason for believing those factors would somehow affect the person's ability to serve as a juror. The Supreme Court reversed, holding that the prosecutor's obligation to articulate a racially-neutral reason "does not demand an explanation that is persuasive, or even plausible." 131 LE2d at 839.