### A94A1891. MATTISON v. THE STATE.
(451 SE2d 807)

BLACKBURN, Judge.

Following a trial by jury, the appellant, Java Mattison, was convicted of armed robbery. He appeals from the entry of the judgment of conviction and sentence and the denial of his motion for new trial.

1. Initially, Mattison asserts that the trial court erred in charging the jury that "[a] person commits armed robbery when with the intent to commit theft that person takes property of another from the person or the immediate presence of another by use of an offensive weapon or by any replica, article, or device having the appearance of such weapon." He argues that because the indictment specifically alleged armed robbery "by use of a pistol, an offensive weapon," the jury was erroneously instructed on other means by which the offense of armed robbery could be committed.

"The trial court essentially charged the entire armed robbery statute. OCGA § 16-8-41 (a). It is not usually cause for new trial that an entire Code section is given. This is so even though a part of the charge may be inapplicable under the facts in evidence." (Citations and punctuation omitted.) *Daniels v. State,* 207 Ga. App. 689, 690 (428 SE2d 820) (1993). The evidence produced by the State showed that a handgun was used in the commission of the robbery. In addition, the trial judge read directly from the indictment in the course of instructing the jury. Considering the charge in its entirety, viewed in connection with the evidence adduced at trial, the jury could not have been misled into convicting Mattison of armed robbery by any other means than as charged in the indictment. See id.

2. Mattison next maintains that the trial court erred in failing to

suppress the on-the-scene show-up identification of him while he was sitting in the rear of a patrol car after he was apprehended. However, "such on-the-scene 'show-up' identifications have been held not to be impermissibly suggestive where they are necessary due to the practicalities of the situation." (Citations and punctuation omitted.) *Bigsby v. State*, 210 Ga. App. 696, 697 (436 SE2d 817) (1993). Mattison was apprehended by police officers within 15 minutes after he fled a convenience store's parking lot at a high rate of speed in the victim's automobile, was pursued by the officers at the request of the victim and other witnesses, and was identified by the victim within this time period. The victim had ample opportunity to see Mattison's face for at least a minute at close range during the robbery and the preceding verbal exchange between the two in a well-lighted area of the parking lot, and she was absolutely certain that Mattison was the robber. Under these circumstances, there was no substantial likelihood of misidentification. See id. Hence, the trial court did not err in denying the motion to suppress.

3. Lastly, Mattison, a black male, asserts that the trial court's findings in the *Batson* hearing were clearly erroneous because the explanations offered for the prosecution's exercise of its peremptory challenges were not racially neutral. We agree.

The qualified venire in this case consisted of eighteen blacks and seventeen whites and eight blacks and one black alternate were on the trial jury. The prosecution exercised five of six peremptory challenges to remove blacks from the qualified venire. This overwhelming pattern of strikes establishes a prima facie inference of racial discrimination. *Ford v. State*, 262 Ga. 558 (1) (423 SE2d 245) (1992). There is a "very high probability that this racial disparity did not occur strictly as a matter of chance." Id. at 559.

"Where the result of [the exercise of] peremptory strikes is the grossly disproportionate exclusion of jurors of one race, there is greater likelihood that race was the underlying determining factor and the real explanation for the result. At this point, 'mistake,' or 'ignorance,' or 'idiosyncracy' do little to dispel the inference that racial bias infected the prosecutor's exercise of peremptory strikes. Hence it is not a sufficient rebuttal simply to offer explanations which do no more than fail to prove the defendant's claim that the prosecutor acted, consciously or unconsciously, in a racially-discriminatory manner. That he so acted may be inferred by the circumstances establishing the prima facie case. The prosecutor's explanations must be strong enough to *overcome* the prima facie case." Id.

Here, as in *Ford*, many of the explanations offered by the prosecutor could have applied equally to white jurors whom the prosecutor declined to strike. For example, two black males were stricken because they knew someone who had been mistakenly accused of a

crime and mistaken identity was a defense asserted in the present case. However, the State accepted a white female juror who stated that her son was mistakenly charged with a drug-related offense. While the State argues that this juror was rehabilitated because she stated that she had a positive feeling about law enforcement officials as a result of their assistance in another incident, in contrast, one of the stricken black male's testimony was not rehabilitated after he discussed his positive experience with law enforcement.

In addition, the prosecutor exercised a peremptory strike against a black female because her brother had been beaten years ago by law enforcement officers and she thought that he had been treated unfairly. However, she stated that her brother's past experience with law enforcement officers would not prejudice her decision if she were chosen as a juror. Nevertheless, two white males who had unpleasant experiences with law enforcement officials were accepted by the State although one of the men testified that he thought that law enforcement officials treated his friend unfairly during an incident.

The State also struck a black male because he did not know certain details about the places where his children worked, did not know the type of work they did, did not know details of the work performed by his wife, and misunderstood a question posed by the State, although a white female who also misunderstood a question and supplied an incorrect answer to the question, was deemed acceptable. However, the prosecution failed to show how the juror's lack of detailed information on the work performed by his family members is related to this particular case. See *Chunn v. State*, 210 Ga. App. 209 (2) (435 SE2d 728) (1993). Moreover, part of the prosecution's basis for the exercise of this strike was not neutrally applied. See *Ford*, supra.

The State exercised the last peremptory strike in question against a black male because his daughter was a rape victim and at his request, based in part upon information that he later discovered concerning his daughter's actions, the charges were dropped. The charges were also dropped because the juror did not want his daughter to be involved in the trial of the accused youths at her age. Even assuming arguendo that the reason offered for the exercise of this strike was legitimate because of the potential for bias in favor of the accused and against the State, the other proffered explanations were questionable and insufficient to withstand a *Batson* challenge. *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987).

"A prosecutor carries an especially heavy burden when attempting to rebut a prima facie case as strong as the one in this case. [Cit.]" *Ford*, supra at 560. "The explanations offered in this case simply are not the kind of concrete, tangible, [case-related,] race-neutral and neutrally-applied reasons that can overcome the strong prima facie

case established by the pattern of strikes [exercised] in this case." Id. See *Gamble v. State*, supra at 326 (5). As the State correctly argues, the trial court's findings are entitled to great deference, but "rubber stamp approval of all nonracial explanations no matter how whimsical or fanciful, would cripple *Batson*'s commitment to ensure that no citizen is disqualified from jury service because of race." (Citations and punctuation omitted.) Id. at 327. Consequently, the trial court's findings that the prosecution's explanations for the exercise of its peremptory strikes were racially neutral are clearly erroneous, and a new trial is in order. *Ford*, supra. See also *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993).

*Judgment reversed. Ruffin, J., concurs. Birdsong, P. J., concurs in judgment only.*

DECIDED NOVEMBER 30, 1994 —
RECONSIDERATION DENIED DECEMBER 14, 1994 — ▮▮▮▮▮▮▮▮

*Luana K. Walsh*, for appellant.
*Lewis R. Slaton*, District Attorney, *Penny A. Penn*, *Carl P. Greenberg*, Assistant District Attorneys, for appellee.