### A98A1298. PICKSTOCK v. THE STATE.
(509 SE2d 717)

POPE, Presiding Judge.

Appellant Kevan Pickstock appeals from the denial of his motion for new trial following his conviction on 13 counts of burglary, robbery and kidnapping for which he was sentenced to 90 years. We affirm.

1. Pickstock first asserts that the trial court erred in charging the jury that the date contained in Count 13 was not material. Count 13 charged Pickstock with aggravated assault and asserted that the offense occurred on December 5, 1995. The proof at trial showed that the incident underlying this charge actually occurred on November 21, 1995.

"The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred at any time within the statute of limitations. There is an exception to this rule where the variance between the allegata and the probata surprises and prejudices the defendant by effectively barring an alibi defense he intends to assert. Under the latter circumstances, the trial court should grant the defendant a continuance in order to afford him sufficient time to prepare his defense to meet a new date." (Citations omitted.) *Edgehill v. State*, 253 Ga. 343, 345 (3) (320 SE2d 176) (1984); *Caldwell v. State*, 139 Ga. App. 279, 281 (2) (228 SE2d 219) (1976).

Although Pickstock did raise an alibi defense, there is no question of surprise in this case. The incident underlying Count 13 also resulted in a charge of burglary. That charge, found in Count 12 of the indictment, referenced the correct date of November 21, 1995. Therefore, Pickstock was on notice that he was charged with a crime occurring on that date and thus had the opportunity to pursue evi-

dence of an alibi. And, in fact, his trial attorney conceded that she was not surprised by the state's evidence relating to an alleged assault on November 21, 1995.

After determining that there was no issue of prejudice or surprise to Pickstock, the trial court attempted to fashion a jury charge to apprise the jury of the typographical error in Count 13. The trial court instructed the jury that "[t]he date set out in each count of the indictment is material except for the date set out in Count 13, where the material date is November 21, 1995." Pickstock argues that this charge may have confused the jury regarding the state's burden to prove the other matters alleged in the indictment.

We disagree. "Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. There is no error where it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence." (Citations and punctuation omitted.) *Pullins v. State*, 232 Ga. App. 267 (1) (a) (501 SE2d 612) (1998).

In addition to the charge complained of, the trial court instructed the jury that each count of the indictment had to be considered separately and that the state had the burden of proving the defendant guilty beyond a reasonable doubt of "each count and each and every element of the offense alleged in each count" and "every material allegation of the indictment and every essential element of the crime." These charges clearly outlined the state's burden in the case, and the jury's task of considering each charge of the indictment separately. "[T]he charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness of same. We do not believe that the charge as a whole would mislead a jury of average intelligence." (Citation and punctuation omitted.) *Redd v. State*, 232 Ga. App. 666, 667 (2) (b) (502 SE2d 467) (1998).

Moreover, Pickstock was acquitted of the assault charge alleged in Count 13. This is an indication that the jury did consider the charges separately and further demonstrates that no harm resulted to Pickstock from the trial court's instruction to the jury to disregard the date alleged in Count 13.

2. Pickstock next asserts that the trial court erred in denying his claim of ineffective assistance of counsel based upon his trial attorney's failure to raise a *Batson* objection to the state's jury strikes. "In order to establish that there has been ineffective assistance of counsel, appellant must have shown not only that his counsel's performance was deficient, but also that deficiency resulted in prejudice to him. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); [cit.]." *Trammel v. State*, 265 Ga. 156 (1) (454 SE2d 501)

(1995). We find that Pickstock has failed to meet this burden.

Pickstock was represented at trial by an attorney with the DeKalb Public Defender's office who had more than 10 years of experience and who had handled over 100 trials. The attorney testified at the hearing on Pickstock's new trial motion that she did not make a *Batson* objection because she did not believe that there was any legal basis to do so. While she recalled that the state did strike some black jurors, at no time did she believe that the state was using its strikes in a racially discriminatory manner in violation of *Batson* and, in fact, she saw non-racial reasons for the state's strikes of the black veniremen. Based upon this testimony and his observance of the attorney's performance, the trial court found that there was no evidence that Pickstock had received ineffective assistance of counsel.[1] The trial court's determination on this issue will be affirmed unless that determination is clearly erroneous. *White v. State*, 213 Ga. App. 429, 434 (6) (445 SE2d 309) (1994) (physical precedent). Based on the record in this case, we find that the trial court's findings were not erroneous.

Moreover, because Pickstock has failed to provide us with a transcript of voir dire, we are left without any record of the jury panel composition or the state's peremptory strikes. Thus, we have nothing to review to determine if any prejudice may have resulted from his trial counsel's failure to raise a *Batson* objection. See *White v. State*, 213 Ga. App. at 436 (Smith, J., concurring specially).

3. As his third enumeration, Pickstock argues that the trial court erred in charging the jury on the law of voluntary intoxication because he did not offer intoxication as a defense. The record shows that Pickstock gave police a statement several days after his arrest, which was admitted into evidence. In that statement, Pickstock told detectives that he did not recall the events in question because he had been under the influence of drugs and alcohol at the time.

Even though Pickstock did not claim intoxication as a defense at trial, he offered intoxication as an explanation for his lack of memory in his statement to police. Under these circumstances, we find that a charge on voluntary intoxication was warranted. Moreover, even if the charge were in error, no harm or prejudice resulted to the defendant and this enumeration is without merit. See *Thurston v. State*, 186 Ga. App. 881, 882 (2) (368 SE2d 822) (1988) (charge on intoxication not harmful error even where no evidence supported the charge).

4. Pickstock also asserts that the court erred in failing to sever Counts 1, 2 and 3 of the indictment alleging burglary, robbery and

---

[1] In fact, the trial court found "that defense counsel did as fine a job in this case as I can recall being done in any case, so not only was she not ineffective, she was exceedingly effective with what she had."

kidnapping charges against him. These counts stem from an incident on December 15, 1994, in which a man forced himself into the home of Debbie Mayo and demanded money. When she only gave him $11, he then forced her to drive to various automated teller machine (ATM) locations and to withdraw additional money.

"Offenses may be joined for trial when they are based on the same or similar conduct or when they are based on a series of acts that are connected or part of a single scheme or plan. When charges have been joined solely on the ground that they are of the same or similar character, severance is mandatory; if they are joined for other permissible reasons, however, the trial court has discretion on the issue of severance. Severance should be granted if it is necessary 'to achieve a fair determination of the defendant's guilt or innocence of each offense.'" (Citations omitted.) *Samples v. State*, 217 Ga. App. 509 (1) (460 SE2d 795) (1995).

Pickstock argues that the incident underlying Counts 1, 2 and 3 is totally different from the incidents underlying all the other charges. The evidence in this case demonstrates that a series of burglaries and robberies occurred in a close geographical area from December 1994 to December 1995. In each of the incidents, a man entered an apartment in which someone was home alone or in which children were present. The man gained his initial entrance either through force or deception, held his hand beneath his clothing and indicated he had a gun, demanded money and in almost every instance told the victims that he had killed two to five people already and that he did not want to kill again or that he needed to leave town. Then the man left, usually after obtaining money. Each of the victims identified Pickstock as the perpetrator of the crimes.

Pickstock argues that the incident involving Mayo differs from the other incidents in that the perpetrator never stated that he had killed before and further that the victim was abducted when she only came up with $11 and forced to drive to ATMs to obtain more money. While there are some differences between each of the incidents from which the charges against Pickstock arise, we believe that there are sufficient similarities to show a pattern of conduct. "When the similarity of separate offenses reaches the level of a pattern, it may evidence a single scheme or plan. [Cit.]" *Samples v. State*, 217 Ga. App. at 509. In each of the instances, there are similar circumstances surrounding the victims (someone home alone and/or children present); the crimes all occurred at apartments; the perpetrator gained entry to the apartments in a similar manner; the perpetrator threatened use of a gun, usually with his hand held beneath his clothing; and the perpetrator consistently demanded money from his victims. Moreover, each of these crimes occurred in close geographical proximity to one another within the period of one year, and each of the victims

identified Pickstock as the perpetrator. While the Mayo incident differed in some respects, it involved each of these similarities and thus fell within the pattern.

Moreover, as noted above, the trial court charged the jurors that they must consider each count separately and that the state had the burden of proving each and every element of each offense. Therefore, severance was not necessary to ensure " 'a fair determination of [Pickstock's] guilt or innocence of each offense' " and we find that the trial court properly acted within its discretion in denying Pickstock's motion to sever. *Samples v. State,* 217 Ga. App. at 509. See generally *Lundy v. State,* 265 Ga. 30-31 (1) (453 SE2d 466) (1995); *Smith v. State,* 225 Ga. App. 553, 554-556 (1) (484 SE2d 515) (1997); *Redding v. State,* 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995).

Pickstock also argues under this enumeration that the trial court should have severed Count 12, alleging a burglary charge occurring on November 21, 1995, because the victim of that burglary testified that nothing was taken. He makes the same argument with regard to Count 10, alleging a robbery charge occurring on October 10, 1995, because only two bracelets, and not money, were taken from the victim. For the reasons noted above, we find that these factual distinctions do not remove these charges from the pattern of conduct shown in the offenses overall.

5. In his final two enumerations of error Pickstock contends that the trial court erred in admitting pre-trial and in-court identification testimony.

(a) Pickstock challenges the trial court's decision to allow evidence concerning some of the victims' pre-trial identification. Pickstock argues that the one-on-one show-up resulting in the identification made by victim Frances Murray was impermissibly suggestive. He also contends the trial court erred in denying his motion to exclude pre-trial identifications made by victims Frank Rambo and Debbie Mayo where they each tentatively identified Pickstock from a photo lineup, and then later confirmed this identification after seeing Pickstock at his preliminary hearing.

"There is no per se exclusionary rule applied to pre-indictment confrontations. Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. The totality of the circumstances must be viewed to determine if there is a likelihood of misidentification which offends against due process and the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation. *Towns v. State,* 136 Ga.

App. 467, 468 (1) (221 SE2d 631) (1975), applying the factors enumerated in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972)." (Citations and punctuation omitted.) *Ferguson v. State*, 221 Ga. App. 415, 418 (1) (471 SE2d 528) (1996).

### *Murray*

The record shows that Frances Murray was home alone for lunch when a man knocked on her door and asked to speak with her about the apartment complex where she was living. Murray spoke with the man through her sliding glass door and testified that this exchange took about three or four minutes. She then let the man inside her apartment, and he walked over to a table and slid Murray's wallet inside his pocket. Murray testified that she realized at this point she had done the wrong thing in letting the man into her apartment. The man then threatened to kill her and said that he had already killed someone else that morning. The man was in her apartment, where the lights were on, three or four minutes before she was able to escape from her apartment. The man pursued her, pinning her against the wall. At that time, she was face-to-face with her attacker for about 60 to 90 seconds. Murray eventually was able to break free and run for help, while the man fled.

Murray described her attacker to the police as a 5′ 9″ or 5′ 10″ man wearing dark pants, a plaid shirt, a blue baseball cap and a black jacket. Approximately 20-30 minutes after the attack, the police drove Murray by Pickstock, whom the police had apprehended in the area. Pickstock was wearing only jeans and a black T-shirt. The first time the police drove by, Pickstock was on the ground with half of his face obscured, and Murray was unable to make an identification. When the police car then drove by again, Pickstock was standing up and Murray could observe his entire face, approximately three feet from the car. She identified Pickstock positively as her attacker. Within the next few days, police were notified that a plaid shirt and a blue baseball cap had been found stuffed into a bucket in a yard near the location where Pickstock was apprehended.

"[S]uch on-the-scene show up identifications have been held not to be impermissibly suggestive where they are necessary due to the practicalities of the situation." (Citations and punctuation omitted.) *Mattison v. State*, 215 Ga. App. 635, 636 (2) (451 SE2d 807) (1994). In this instance, police had captured Pickstock fleeing the scene of the crime and needed an identification from Murray to determine if they had reason to detain him. "[B]oth state and federal courts have recognized consistently those countervailing considerations which may render the one-on-one confrontation permissible, if not desirable. These include the necessity to resolve promptly any doubts as to

identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects." (Citations and punctuation omitted.) *Sabo v. State*, 226 Ga. App. 106, 107 (2) (a) (485 SE2d 591) (1997).

It follows that the trial court did not err in denying Pickstock's motion to suppress Murray's pre-trial identification testimony. The fact that Pickstock was already in custody and being restrained by police when she first viewed him does not render the identification impermissibly suggestive in light of surrounding circumstances. See *Flores v. State*, 228 Ga. App. 152, 153 (491 SE2d 86) (1997); *Maxwell v. State*, 178 Ga. App. 20, 21 (1) (342 SE2d 8) (1986). Murray had ample time to observe the perpetrator, both before the attack, and thus before she became nervous, as well as later during the attack. Her description of the perpetrator and his clothing was sufficiently accurate to support her later identification, especially in light of the evidence indicating that the perpetrator shed some of the clothing she described in his escape. The one-on-one show-up occurred within one-half hour of the attack. Moreover, the fact that Murray made her identification only after having the opportunity to view Pickstock's face helps bolster her identification.

### *Rambo and Mayo*

The evidence shows that Frank Rambo was home alone on the afternoon of October 2, 1995, when a man knocked on his door. Rambo stepped outside and spoke with the man for a couple of minutes. After the man said he wanted to use the phone, Rambo let him into his apartment. Once inside, the man said he had a gun and demanded money. He told Rambo that he had killed someone and needed money to get out of state. At this point the man was some three to four feet away from Rambo, although the lights were not on in the apartment. In describing the perpetrator to police, Rambo stated the man was clean shaven, six feet in height, with a medium build.

On December 6, 1995, Rambo was given the opportunity to review a photo line-up where he tentatively selected Pickstock's picture. He told the officer that he was not sure because it was not a good photo, but that it looked most like the man who had robbed him. He later attended Pickstock's preliminary hearing where he saw him seated in the courtroom and later being led from the courtroom. Rambo was able to view Pickstock's face in its entirety and positively identified him as the man who robbed him.

Debbie Mayo had arrived home alone on December 15, 1994, when, as she was letting herself into her apartment, she observed a man ring the doorbell at the apartment next to hers. When Mayo

opened the door to her apartment, the man shoved her inside, stepped in behind her and shut the door. He told Mayo that he had a gun and said he needed money. When she was only able to give him $11, he ordered her to drive him to several ATM locations. After getting more money, the man asked her to drive to a MARTA station, where he fled on foot. The whole episode lasted about 45 minutes, and during most of that time the man was seated a few feet away from Mayo in her car. Mayo testified that she made a point of looking at the man as often as she could so that she would remember him. Mayo told police that she was abducted by a 6′ 3″ man, who weighed around 200 lbs., who was wearing a black ball cap and jeans, and who had a somewhat roundish face and no beard.

On December 7, 1995, Mayo viewed a photo line-up and selected Pickstock's photo, telling the police detective that she was 75 percent sure in her identification. She also appeared at Pickstock's preliminary hearing and was able to view Pickstock coming into the courtroom. She then made a positive identification.

Under these circumstances, we find that the trial court did not err in allowing Rambo and Mayo to testify as to their pre-trial identification of Pickstock. Each of them had ample opportunity to view Pickstock during the commission of the crime. The descriptions they gave to police were sufficiently consistent with Pickstock's appearance.[2] Each of them initially selected Pickstock's photo and later confirmed their earlier identification after viewing Pickstock in person. As noted above, the mere fact that Pickstock was in custody at the time they viewed him in person does not render their in-person viewing impermissibly suggestive. See *Flores v. State*, 228 Ga. App. at 153; *Anderson v. State*, 206 Ga. App. 354, 355 (1) (426 SE2d 6) (1992); *Maxwell v. State*, 178 Ga. App. at 21.

(b) Pickstock further argues that the trial court erred in allowing the crime victims' in-court identification because he contends their pre-trial photo identification was impermissibly suggestive. He complains that some of the victims were told that the police had a suspect in custody before viewing the photo line-up.[3]

However, Pickstock raised no objections at trial to the in-court identifications and therefore, this issue is not subject to appellate review. "It is well established law that enumerations of error which raise questions for the first time on appeal present nothing for deci-

---

[2] Both Rambo and Mayo stated that the man who robbed them was clean shaven. Although Pickstock had a full beard at the time of his arrest, this inconsistency could be explained by the passage of time. He was arrested two months after Rambo was robbed and almost one year after Mayo was robbed and abducted.

[3] While Pickstock also questions the certainty of some of the identifications, such contentions go to the issue of credibility, which is a matter to be resolved by the jury. *Troutman v. State*, 191 Ga. App. 243, 244 (1) (381 SE2d 409) (1991).

sion." (Citations and punctuation omitted.) *Baez v. State*, 231 Ga. App. 375-376 (500 SE2d 339) (1998).

Even if Pickstock had properly preserved this issue for appeal, however, we find nothing impermissibly suggestive in the photo lineup that would taint the victims' in-court identifications. The fact that the officers stated that a suspect was in custody was not enough to render the photo identifications invalid. See generally *Thomason v. State*, 268 Ga. 298, 304-305 (3) (486 SE2d 861) (1997). Moreover, a review of the record reveals that the victims testified to their opportunity to view the perpetrator during their crimes and thus established an independent basis to support their in-court identifications. See *Jones v. State*, 226 Ga. App. 428, 431-432 (3) (487 SE2d 62) (1997).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED NOVEMBER 23, 1998.

*Wanda S. Jackson*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Elisabeth G. Macnamara, Assistant District Attorneys*, for appellee.