A02A2114. IN THE INTEREST OF L. J. P., a child.
(574 SE2d 839)

ELDRIDGE, Judge.

Following a full hearing in the juvenile court, L. J. P. appeals his adjudication of delinquency for committing the offenses of criminal attempt to commit armed robbery and aggravated assault, arguing that the evidence was insufficient to support the adjudication and that the trial court erred by denying his motion to suppress. Finding no error, we affirm.

1. The evidence was sufficient to support L. J. P.'s adjudication of delinquency on the charges of criminal attempt to commit armed robbery and aggravated assault.

> In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.

(Citations and punctuation omitted.) *In the Interest of J. M.*, 237 Ga. App. 298 (513 SE2d 742) (1999); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

On January 20, 2002, at approximately 11:00 p.m., Javier Ramos and his father arrived at their home located at 1311 Dartmouth Street. As Ramos exited the van and started toward the house, a white female driver of a four-door, gray car called out to him as she

drove by. The driver continued past Ramos, turned at the stop sign, and came back, calling Ramos to the car. As Ramos turned back from the car, three young black males approached him. One of the males who was wearing a red shirt and red shorts put a gun to Ramos' head and demanded his money and other valuables. When Ramos' father came back outside, the male in the red shirt and shorts pointed the gun at the father. The three males then got into the gray car, which the female was driving, and left the area.

Ramos summoned the police. Officer Duggan was dispatched to Ramos' house. Ramos gave Officer Duggan a description of the car, a partial tag number, and descriptions of the white female driver of the car, the heavyset, black female front seat passenger, and the three men who accosted him with the gun. Ramos stated to Officer Duggan that the person who held the gun to his head was the only person wearing a red shirt and red shorts.

Sergeant David Carswell testified that he was at the Brunswick Police Station at approximately 11:30 p.m. and overheard a BOLO[1] go out about an armed robbery on Dartmouth Street in which three males left the scene in a gray car, possibly a Chevrolet, with a partial tag number of 508AC. Within three or four minutes, and about four blocks from the police station, Sergeant Carswell saw a car matching the description he was given and having a tag number of 365AGZ; he made a traffic stop on the same. There were three black males in the backseat, one of whom was L. J. P., who was wearing an orangish-red shirt and orangish-red shorts. Sergeant Carswell spoke privately with the white female driver of the car and inquired as to her earlier activities that evening. Sergeant Carswell then questioned L. J. P. When L. J. P. confirmed the information Sergeant Carswell had been given by the driver of the car, he released the car and its passengers because the BOLO had not stated there was a white female driver. Shortly after Sergeant Carswell released the car, a second BOLO was given which stated that a white female was driving the car. Additional information was given over the radio that a car matching the description was often parked on Ellis Street; therefore, Sergeant Carswell proceeded to that location.

Officer Richard Meyer, having heard the armed robbery call, was heading north in the 2500 block of Ellis Street when two black males and a white female ran across the street in front of his car and went into a house. Officer Meyer relayed what he saw to Sergeant Carswell, and the officers stopped at the house. Officer Meyer and Sergeant Carswell knocked on the door which was answered by a heavyset black female. Sergeant Carswell inquired if L. J. P. was there.

---

[1] Be on the lookout.

After speaking with the female who answered the door, the two officers went to the house across the street, knocked on the door, and were instructed to come in by one of the two males sitting in the living room. While the officers were standing in the living room talking with the two males, L. J. P. walked into the living room. The gray car was parked in the driveway, with its engine still warm.

Officer Duggan took Ramos to the Ellis Street location. When they arrived, L. J. P. and another male were standing outside the house. Ramos identified L. J. P. as the male who had held the gun to his head and demanded his money. L. J. P. was placed under arrest and transported to the Brunswick Police Station. In the presence of his mother, L. J. P. made a statement after he had been given his *Miranda*[2] warnings. In such statement, L. J. P. admitted to being in the car, going to Ramos' house, and being outside the car when the gun was placed to Ramos' head by another member of the group.

At trial, the defense called S. B. as a witness. S. B. testified that he was with L. J. P. at the time of the incident. While denying that L. J. P. was the gunman, S. B. testified that L. J. P. was in the car when the robbery was planned; that he exited the car just prior to the driver calling Ramos to the car; that he reentered the car at the corner stop sign; and that L. J. P. was wearing a red shirt and red pants. S. B. further testified that one of the guns used in the robbery belonged to L. J. P.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to enable a rational trier of fact to adjudicate L. J. P. delinquent beyond a reasonable doubt for the offenses for which he was convicted. *Jackson v. Virginia*, supra.

2. L. J. P. enumerates as error the trial court's denial of his motion to suppress. L. J. P. asserts that his in-custody statement should have been suppressed because it was the result of a warrantless arrest. L. J. P. further asserts that the showup identification of L. J. P. was impermissibly suggestive, and thus, the officer's testimony of Ramos' identification of L. J. P. just prior to the time of the arrest was inadmissible.

(a) We find no error in the trial court's admission of the appellant's statement to the police based on his warrantless arrest.

> A warrantless arrest is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense, and probable cause exists if the arresting officer has

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

knowledge and reasonably trustworthy information about [the] facts and circumstances sufficient for a prudent person to believe the accused has committed an offense. *Johnson v. State*, 258 Ga. 506 (2) (371 SE2d 396) (1988).

*Patterson v. State*, 274 Ga. 713, 715-716 (559 SE2d 472) (2002).

In this case, the record shows that Ramos gave a description of his assailants and the car they were driving, including a partial tag number, to the police. Ramos stated the gunman was wearing a red shirt and red shorts. Shortly thereafter, a police officer pulled over a vehicle matching the description given by Ramos, but released the vehicle because he did not have complete information as to the descriptions of all the assailants. Upon hearing a full description of the gunman and the other assailants, the officer realized the occupants of the vehicle he had just released matched the description. The vehicle was found shortly thereafter parked at a residence with the engine still warm. Three others matching the description of the assailants given by Ramos were observed running from one house to another. The door of the house the three individuals ran into was opened by a fourth individual, who matched Ramos' description of the female passenger. L. J. P. was in the house where the car was parked and was still wearing a red shirt and red shorts. Within 15 to 20 minutes after the time of the robbery, Ramos was transported to the location where L. J. P. was discovered, and he identified L. J. P. as the person who held the gun to his head and demanded his valuables. Since the officers knew facts and circumstances sufficient to warrant a prudent person to believe that L. J. P. had committed an offense, the officer was authorized to arrest L. J. P. without a warrant, and thus such warrantless arrest provides no ground for the exclusion from evidence of L. J. P.'s in-custody statement to police.

(b) L. J. P. argues that even though he was one of two individuals the police had standing outside, he was the only one dressed in a red shirt and red shorts making the identification essentially one-on-one and impermissibly suggestive.

This [C]ourt has thoroughly considered the dangers inherent in the practice of bringing single suspects to confront witnesses for the purpose of pre-trial identification, in particular, the danger of the substantial likelihood of irreparable misidentification. To evaluate that likelihood, we apply the test enunciated in *Neil v. Biggers*, [409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972),] which requires that we consider the witnesses' opportunity to view the suspect at the time of the offense, the witnesses' degree of attention, the accuracy of the witnesses' prior description and their level of cer-

tainty. In evaluating these factors, the trial court is the trier of fact and must judge the credibility of the witnesses and the weight and conflict in the evidence. Where evidence supports the trial court's ruling, we will not disturb that ruling.

(Punctuation and footnotes omitted.) *Gresham v. State*, 246 Ga. App. 705, 706 (541 SE2d 679) (2000).

Additionally, one-on-one identifications " 'have been held not to be impermissibly suggestive where they are necessary due to the practicalities of the situation.' [Cit.]" *Pickstock v. State*, 235 Ga. App. 451, 456 (509 SE2d 717) (1998). Countervailing considerations which may render the one-on-one confrontation permissible, if not desirable, include "the necessity of a speedy police investigation and the necessity to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects. [Cits.]" *Simmons v. State*, 209 Ga. App. 21, 22 (2) (432 SE2d 623) (1993).

Applying these factors, we find there was not a substantial likelihood of irreparable misidentification. Ramos testified that he was able to observe the suspect "when they first came toward me." L. J. P. fit Ramos' physical description of the gunman and L. J. P. was wearing clothes consistent with Ramos' description when apprehended approximately 15 to 20 minutes after the robbery. The car sitting in the yard of the house where L. J. P. was located matched Ramos' description of the vehicle, and the engine was still warm. At the scene, Ramos was able to immediately and with certainty identify L. J. P. as the gunman.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 22, 2002 —
RECONSIDERATION DENIED DECEMBER 6, 2002

*James A. Yancey, Jr.,* for appellant.

*Stephen D. Kelley, District Attorney, W. Franklin Aspinwall, Jr., Assistant District Attorney,* for appellee.